GEORGE PERRY AND MARY PERRY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Perry v. Commissioner
Docket Nos. 5137-86; 5154-86; 5224-86.
United States Tax Court
T.C. Memo 1987-447; 1987 Tax Ct. Memo LEXIS 444; 54 T.C.M. (CCH) 432; T.C.M. (RIA) 87447; September 8, 1987. Craig A. Van Matre, for the petitioners. Douglas A. Hinds, for the respondent. GUSSIS
MEMORANDUM FINDINGS OF FACT AND OPINION GUSSIS, Special Trial Judge: These consolidated cases were heard pursuant to the provisions of section 7456(d)(3) of the Internal Revenue Code of 1954 (redesignated section 7443A(b)(3) by section 1556 of the Tax Reform Act of 1986, *445 Pub. L. 99-514, 100 Stat. 2755) and Rule 180 et seq. of the Tax Court Rules of Practice and Procedure.[2]
Respondent determined the following Federal income tax deficiencies: Income Tax Deficiencies
Docket No.
Petitioner
1981
1982
5137-86
George and
$ 5,767
$ 3,297
Mary Perry
5154-86
William S. and
5,767
3,297
Evelyn R. Ward
5224-86
Terry and Sally
5,767
3,297
Rackers
The issue is whether the partnership WRP Aircraft Rentals, a noncorporate lessor, is entitled to pass-through investment tax credits under section 46(e)(3) to the petitioners with respect to leases of aircraft to related corporations. FINDINGS OF FACT Some of the facts were stipulated and they are herein incorporated by this reference. Petitioners filed their respective joint Federal income tax returns for the years 1981 and 1982 with the Internal Revenue Center as Kansas City, Missouri. Petitioners in each of the cases here involved were *446 residents of Jefferson City, Missouri at the time the petitions herein were filed. During the year 1981 George Perry, William S. Ward and Terry Rackers formed a general partnership, WRP Aircraft Rentals (hereinafter WRP or the partnership), with each partner owning a one-third interest. On September 25, 1981 the partnership purchased a 1972 single-engine Cessna for $ 48,000. On October 16, 1981 the partnership purchased a 1979 twin-engine Beechcraft for $ 142,500. In December 1982 the partnership purchased a 1974 twin-engine Beechcraft for $ 98,904. During 1981 and 1982 George Perry, William S. Ward and Terry Rackers owned all of the stock in Jefferson City Flying Service (hereinafter JCFS), a corporation in the business of chartering, renting and leasing aircraft and, in addition, provided flying instructions. During 1981 and 1982 Perry, Ward and Rackers also owned all of the stock in Central Missouri Aviation, Inc. (hereinafter CMA), a corporation in the business of chartering and renting aircraft. The corporationJCFS was formed in 1974 by William S. Ward and Terry Rackers to acquire an airplane rental and chartering business which had been in operation since 1969. In *447 June 1977 the corporation CMA was formed by George Perry, William S. Ward and Terry Rackers to acquire an airplane rental and chartering business (Skyways) which had been in operation since about 1970. On or about June 1980 George Perry acquired stock in JCFS and during the year 1981 through 1984 he owned one-third of the outstanding stock in JCFS. During 1981 the partnership's 1979 Beechcraft and the 1972 Cessna were chartered or rented exclusively to customers of either JCFS or CMA. During 1982 the partnership's 1979 Beechcraft was operated a total of 591 hours, with 553.1 hours of the total flying time used by customers of either JCFS or CMA. The remaining 37.9 hours of flying time were used by unrelated third parties. During 1982 the partnership's 1972 Cessna was operated a total of 571 hours, with 565 hours of the total flying time used by customers of either JCFS or CMA and the remaining 6 hours used by unrelated third parties. The partnership's 1974 Beechcraft purchased in December 1982 was not chartered or rented to a customer of the partnership, JCFS or CMA until the year 1983, although it was available for such use during 1982. During 1983 and 1984 the partnership's *448 1979 Beechcraft was operated a total of 470.2 hours and 502.2 hours, respectively, with 402.9 hours and 482.3 hours, respectively, of the total flying time used by customers of either JCFS or CMA. The remaining hours of flying time were used by unrelated third parties. During 1983 and 1984 the partnership's 1974 Beechcraft was operated a total of 591.9 hours and 409.7 hours, respectively, with 585.7 and 398.4 hours, respectively, of total flying time used by customers of either JCFS or CMA and the remaining hours of flying time used by unrelated third parties. During 1981 and 1982 all arrangements for the charter or rental of the partnership aircraft were made at the corporate offices of either JCFS or CMA. During 1981 and 1982 JCFS and CMA advertised their airplane charter and rental business. During 1981 the partnership incurred operating expenses with respect to its ownership of the airplanes purchased during that year in the following amounts: Maintenance
$ 4,635.20
Fuel
8,728.85
Insurance
389.00
Miscellaneous
expenses
54.03
Interest
1,796.47
Depreciation
9,525.00
During 1982 the partnership incurred the following expenses with respect to *449 its ownership of the three airplanes purchased in 1981 and 1982: Maintenance
$ 25,793.94
Fuel
50,674.09
Insurance
1,885.00
Legal and
accounting fees
225.88
Depreciation
56,746.00
In addition, the 1982 partnership tax return reflected the payment of $ 10,000 to each partner as commissions. During 1981 and 1982 the partnership reported gross receipts in the respective amounts of $ 34,809.40 and $ 140,963.06. George Perry, William S. Ward and Terry Rackers each claimed an investment tax credit on their respective 1981 tax returns of $ 5,767 which was passed through to them by the partnership in connection with the partnership's purchase in 1981 of the 1979 Beechcraft and the 1972 Cessna. On their 1982 tax returns, each of the three parties claimed an investment tax credit of $ 3,297 which was passed through to them by the partnership in connection with the partnership's purchase in 1982 of the 1974 Beechcraft. Respondent disallowed the investment tax credits claimed by George Perry, William S. Ward and Terry Rackers in each of the years 1981 and 1982. OPINION Section 38 allows a credit against tax for investments in certain depreciable property *450 in an amount determined under section 46. Section 46(e)(3) provides in relevant part: (e) LIMITATIONS WITH RESPECT TO CERTAIN PERSONS. -- * * * (3) NONCORPORATE LESSORS. -- A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if -- * * * (B) the terms of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property * * * Respondent contends that the airplanes at issue were leased by the partnership (WRB) to two related corporations (JCFS and CMA) for more than 50 percent of their useful lives and that consequently the partners (petitioners herein) are ineligible for the investment credit. The parties have stipulated that the useful life of the airplanes at issue, for purposes of applying the 50 percent of useful life test under the statute, is six years. Petitioners have the burden of proof Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioners were equal partners in the partnership (WRB) which owned the aircraft at issue and they also owned all of the stock in *451 the two corporations, JCFS and CMA. JCFS had been in the airplane rental and chartering business since 1974 and CMA had been in the aircraft rental and chartering business since 1977. The partnership (WRB) was formed in 1981. Petitioners contend that the "true leases" for the aircraft at issue were not between the partnership and the two corporations, JCFS and CMA. Instead, petitioners argue, the lease arrangements were with the various customers procured by the two corporations who actually used the aircraft for a day or two at a time. Such brief lease terms, the argument continues, would easily qualify under the statutory 50 percent of useful life test. Petitioners categorize the role played by the two corporations in these transactions merely as that of brokers. We do not believe that petitioners' interpretation comports with the factual and economic realities of the business transacted. JCFS and CMA were both properly certified by the Federal Aviation Administration to operate airplanes on a charter basis, wherein the partnership did not have any such certificate to engage in the charter business during the period here involved. During 1981 and 1982 charters accounted *452 for approximately 90 to 95 percent of the usage of the aircraft at issue. Both JCFS and CMA were established in the field of aircraft charter and rental operations. During the years 1981 and 1982 JCFS and CMA also leased airplanes from unrelated third parties. In 1981 JCFS had approximately 15 employees and CMA had between 15 and 20 employees and maintained separate office facilities at the airports in Jefferson City, Missouri and Columbia, Missouri, respectively. On the contrary, the partnership had no employees apart from the three partners and did not maintain an independent office. All charter pilots for the aircraft at issue were supplied by JCFS or CMA. Both corporations employed business managers. All scheduling of aircraft was done at the corporate offices of either JCFS or CMA. Each corporation maintained a schedule book for such purpose. Customer payments for the charter of the aircraft at issue were made directly to JCFS or CMA, and the partnership was then paid a portion of the charter receipts. No brokerage fees were paid by the partnership to the corporations in 1981 or 1982. During the years 1981 and 1982 the partnership's aircraft were stored near the hangars *453 of either JCFS or CMA and were readily available to the corporations as needed. In 1981 the partnership-owned airplanes (the 1979 Beechcraft and the 1972 Cessna) were chartered or leased exclusively to customers of either JCFS or CMA. In 1982 more than 90 percent of the total flying time of the 1979 Beechcraft and the 1972 Cessna was attributable to customers of either JCFS or CMA. Against this factual background, the petitioners' effort to label JCFS and CMA as brokers for the use of the partnership-owned aircraft is singularly unpersuasive and completely without support in the record. We conclude on this record that the lease arrangements of the partnerships for the aircraft at issue were with the two corporations.[3] The mere absence of a formal agreement in 1981 and 1982 between the partnership and the two corporations for the use of the aircraft at issue does not preclude a lease arrangement. For purposes of section 46(e)(3) a lease is defined under the pertinent regulations as any arrangement or agreement, formal or informal, written or oral, by which the owner of property (the lessor) receives consideration in any form for the use of his property by another party. Sections *454 1.46-4(d)(4) and 1.57-3(d)(1), Income Tax Regs.; see Conway v. Commissioner,T.C. Memo. 1982-358. In the absence of any limited term in a written lease arrangement, we must consider all the facts and circumstances surrounding the transaction to determine whether the lease of the aircraft at issue was indefinite or limited in duration so as to qualify under the test set forth in section 46(e)(3)(B). For purposes of section 46(e)(3)(B) the length of a lease term may properly be determined by the "realistic contemplation" of the parties involved. [4]Hokanson v. Commissioner,730 F.2d 1245, 1248 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; see also Owen v. Commissioner,T.C. Memo. 1987-375; Connor v. Commissioner,T.C. Memo. 1987-223. Here, the partnership airplanes were leased to two corporations controlled by the partners, the airplanes were readily available to the two corporations as they were needed, the partnership *455 leased the airplanes to the corporations almost exclusively and, in view of the lack of any significant business operations carried on by the partnership itself and the complete absence of any separate business facilities of the partnership, it would appear that the airplanes were acquired by the partnership simply to fill the anticipated needs of the two corporations. Under these circumstances, the leases of the aircraft to the corporations were essentially open-ended, strongly impelling a conclusion that the terms of said leases were indefinite. Cf. Ridder v. Commissioner,76 T.C. 867, 875 (1981). In short, there is nothing in the record to suggest even remotely that the parties realistically contemplated anything other than an indefinite lease term. On this record, therefore, petitioners have failed to show that the leases of the aircraft at issue satisfied the requirements of the statute. *456 The fact that the economic and financial risks of ownership of the aircraft were never shifted from the partnership to a lessee is without significance in determining whether the partnership qualified for the investment credit under the applicable statute. In drafting section 46(e)(3)(B), Congress could have chosen a rule based upon the benefits and burdens of ownership in light of all the relevant facts and circumstances. * * * But they did not. Instead, Congress decided to impose two hard-and-fast tests, one of which petitioner herein has failed. In effect, Congress chose a more easily administered approach (which, for taxpayers, provides predictability) and sacrificed some small measure of perfect equity. Not only was this choice at least arguably reasonable, it is not for us in any case to pass upon the wisdom of legislation. * * * [Citations omitted. Ridder v. Commissioner,76 T.C. 867, 876 (1981).] Nor is it material for purposes of determining the availability of the investment tax credit that the petitioners had valid business reasons in forming the general partnership to purchase the aircraft at issue. The statute simply does not turn upon *457 such considerations. Instead, the test under section 46(e)(3)(B) is, in the case of a noncorporate owner of property, whether such property is leased for a period not exceeding 50 percent of its useful life. We must conclude on this record that the terms of the leases between the partnership and the two lessee corporations were indefinite and consequently, petitioners (as partners of the lessor partnership) are not entitled to an investment tax credit for the aircraft at issue in 1981 and 1982 under the limitations of section 46(e)(3)(B). Respondent is sustained. Decisions will be entered for the respondent.
Footnotes
1. Cases of the following petitioners are consolidated herewith: William S. Ward and Evelyn R. Ward, docket No. 5154-86; and Terry Rackers and Sally Rackers, docket No. 5224-86. ↩
2. All section deferences are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. With respect to the absence of a written lease agreement, Mr. Rackers testified "we just probably were sloppy. We probably should have had something, but we just never did do it." ↩
4. We have considered the recent case of McNamara v. Commissioner,    F.2d    (7th Cir., August 19, 1987) and we deem it factually distinguishable. In the McNamara case, the parties executed lease documents with stated lease terms, a factor central to the conclusion reached by the Court. We do not have such a situation in the case before us and, consequently, the considerations impelling the conclusion reached by the Court in the McNamara case are inapplicable here. In any event, we would reach the same result here even upon consideration of the principles emphasized in the McNamara↩ case as governing the application of the provisions of section 46(e)(3).