DONALD G. McNAMARA and VALERIE J. McNAMARA; ROBERT F. CHRISTIANSEN and LUCILLE L. CHRISTIANSEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McNamara v. Commissioner
Docket No. 2612-84.
United States Tax Court
T.C. Memo 1988-113; 1988 Tax Ct. Memo LEXIS 144; 55 T.C.M. (CCH) 401; T.C.M. (RIA) 88113; March 15, 1988; As amended April 6, 1988 John F. Emanuel, for the petitioners. Sheldon M. Kay, for the respondent. WRIGHT
*145 MEMORANDUM OPINION WRIGHT, Judge: This opinion is necessitated by a mandate, issued August 19, 1987, from the United States Court of Appeals for the Seventh Circuit vacating and remanding for further proceedings consistent with their opinion rendered regarding an appeal from our opinion in McNamara v. Commissioner,T.C. Memo. 1986-300 (McNamara I). In McNamara I we held that five leases of equipment between a corporation (Roofing) and a partnership (D & B), both of which were controlled by petitioners, failed to meet the requirements of section 46 (e)(3) [1] because, in reality, the lease terms were for periods exceeding 50 percent of the leased property's useful life. [2] We determined that the lease terms, although limited in form to 50 percent of the useful lives of the subject property, would, in fact, be extended indefinitely. In evaluating the lease terms, we found that the parties had a "realistic contemplation" at the time of entering each lease, that the lease terms would be of indefinite duration. This test, based on a substance over form analysis, was articulated in Hokanson v. Commissioner,730 F.2d 1245, 1248 (9th Cir. 1984), *146 affg. a Memorandum Opinion of this Court, wherein the lease term was not fixed and definite. See also Carlson v. Commissioner,79 T.C. 215, 226 (1982), affd. 712 F.2d 1314 (9th Cir. 1983); Ridder v. Commissioner, T.C. 867 (1981).[3] In reaching our holding, we noted the following evidentiary factors: (1) the equipment was purchased by D & B to meet the needs of Roofing; (2) the costs of alternative leasing arrangements were found to be prohibitive; (3) D & B leased the property only to related companies; and (4) D & B and Roofing were commonly controlled. McNamara I, supra. Because we decided that the lease failed to meet the first prong of the statutory test, we did not discuss the second prong of the test: the requirement that the section 162 expenses incurred with respect to the subject property exceed 15 percent of the rental income during the first 12 months. *147 The United States Court of Appeals for the Seventh Circuit determined that our application of the realistic contemplation test exceeded the Congressional objective embodied in section 46(e)(3) to allocate the investment tax credit to the party who bears the economic risks of ownership. McNamara v. Commissioner,827 F.2d 168 (7th Cir. 1987). The Seventh Circuit held that: At least in cases involving leasing activity that is not primarily tax motivated, where the stated lease term in a written lease document satisfies the 50 percent requirement, that document should be respected, and unless the Commissioner can demonstrate that the lease is a "sham," i.e., that there has been a real shifting of all economic risk associated with the leased property from the lessor to the lessee, the lessor is entitled to claim an investment tax credit for the property * * * [827 F.2d at 172.]
Under the test articulated by the Court of Appeals, a "sham" would be manifested by the parties' "fixed intention that the lease will be continuously renewed on the same or substantively identical terms." McNamara v. Commissioner,827 F.2d at 172. Thus, where *148 a written lease limits the term to less than 50 percent of the useful life of the subject property and where there is no fixed intention evinced to renew on substantively identical terms, the economic risks remain with the lessor and the lease should be respected. This case was remanded to allow us to determine whether petitioners properly took the investment credit with respect to any of the five leases at issue. In our deliberation with respect to this matter, we therefore must determine (1) of both D & B and Roofing had a fixed intention at the time of entering the lease to renew the lease for a period longer than 50 percent of the useful life of the subject property for the same or substantively identical terms, and, if not, (2) whether the section 162 expenses paid or incurred with respect to the subject property exceeded 15 percent of the rental income during the 12 months of operation after the property was transferred to the lessee. We conclude that none of the leases were "shams" and further that the four of the five leases in issue satisfy both prongs of the statutory test of section 46(e)(3)(B). The findings of fact from McNamara I are incorporated herein by reference. *149 In McNamara I we found that of the five leases executed between D & B and Roofing, four had been renewed. In each of those four, the terms and conditions of the subsequent leases were materially changed. In all four leases, the alterations included a reduction in rent and a shifting of the liability for expenses between the parties. Two of the renewed leases contained options to purchase which were removed in subsequent leases. The subject property of the fifth lease which had a stated lease period of less than half of the property's useful life, a Grove crane, was distributed by D & B to the partners six months after it was purchased. They, in turn, contributed it to D & BJ Associates, another partnership comprised of the D & B partners and the brother of one of the partners. D & BJ Associates leased the property to F.J.A. Christiansen Corp., a wholly owned subsidiary of Roofing, for a stated term of less than 50 percent of the property's useful life. At the time of trial, there was no evidence that the property was still being leased to F.J.A. Christiansen Corp.
Upon examination of the leases in issue, we find that all five of the leases between D & B and Roofing were *150 for terms of less than 50 percent of the useful life of the subject property. There is no evidence in the record that, at the time of executing the leases, the parties had a fixed intention that the leases would be renewed "on the same or substantively identical terms." In fact, the four leases which were renewed were not renewed on the same terms. Moreover, we previously determined in McNamara I that the subject leases were not primarily tax motivated. Thus, while we are reluctant to use the word "sham" in this contest, we cannot find that the leases before us were "shams," within the meaning of the test set forth by the Seventh Circuit. The second issue for our consideration is whether the lessor's section 162 expenses, taken with respect to the first 12 months of the operation of the leased asset, exceed 15 percent of the total rental income produced by the property. We determined in McNamara I that, except with respect to the Grove crane, petitioners paid section 162 expenses in excess of 15 percent of the rental income received from each of the leased assets during the first 12 months of the operation of each asset. With respect to the Grove crane, there are two *151 separate leases to consider. During the 6-month period when D & B was the lessor (between October 1978 and March 1979), D & B paid section 162 expenses in the amount of $ 1,026 and received total rental income in the amount of $ 20,400. During the subsequent 6 months of operation, from March 1979 until September 1979, in which D & BJ Associates was the lessor, D & BJ Associates incurred, and ultimately paid, section 162 expenses in the amount of $ 5,000 and received total rental income in the amount of $ 18,200. Thus, with respect to D & B, the section 162 expenses failed to exceed 15 percent of rental income and with respect to D & BJ Associates, section 162 expenses did exceed 15 percent of rental income. Section 46(e)(3) is a technical provision imposing requirements which must be met. As we noted in Ridder v. Commissioner, supra at 876: In drafting section 46(e)(3)(B) Congress could have chosen a rule based upon the benefits and burdens of ownership in light of all the relevant facts and circumstances. * * * But they did not. Instead, Congress decided to impose two hard-and-fast tests, one of which petitioner herein has failed. In effect, Congress chose a more easily *152 administered approach (which, for taxpayers, provides predictability) and sacrificed some small measure of perfect equity. In the case before us, we have a single piece of property subject to two leases with two separate lessors during the first 12 months of operation. In respondent's regulations, promulgated under section 46(3)(3), a lease which includes more than one property, and pursuant to section 1.57-3(d)(l), Income Tax Regs., is treated as two separate leases, the more-than-15 percent mathematical test under section 46(e)(3)(B) is applied to each individual lease. Sec. 1.46-4(d)(3)(i), Income Tax Regs. Furthermore, pursuant to section 1.46-4(d)(4), Income Tax Regs, where one property is subject to two or more successive leases with one lessor, the terms of the leases are aggregated for purposes of determining whether the lease satisfies the 50 percent requirement of section 46(e)(3)(B). Neither of those provisions directly addresses a situation in which one property is subject to two distinct leases during the first 12 months of operation. Section 46(e)(3) which extends to noncorporate lessors the privilege and benefits of the investment credit does not protect the taxpayer *153 from the full panoply of requirements and restrictions which are generally attendant on the investment credit. Kerry v. Commissioner,89 T.C. 327 (1987). Section 48(d) provides, in general, for the pass-through of the investment credit from the lessor to the lessee in certain situations. If the lessor makes the election under section 48(d)(2) and complies with various restrictions and conditions contained in the regulations promulgated under section 48 the lessee may be entitled to take all or a portion of the investment credit. Section 48(d)(3) further requires that the leased property with respect to which the investment credit is taken must be new section 38 property. The lessee must be the property's original user. Sec. 1.48-4(a)(l)(iii), Income Tax Regs.Section 1.48-4(b), Income Tax Regs., states that "the lessee would not be considered the original user of the property if it has been previously used by the lessor or another person." Therefore, for petitioners to claim the investment credit the property subject to the credit must qualify as new section 38 property in the hands of each lessee. Although two of the individuals were partners in both of the *154 lessee partnerships, the two leases are separate and distinct. Thus, when D & BJ Associates leased the crane in March of 1979 to F.J.A. Christiansen Corp. the crane was not new section 38 property in the hands of the corporation because it had been used by Roofing. The investment credit is not available if the lease fails to comply with technical requirements of section 46(e)(3) and section 48(d). Thus, with respect to the lease between D & B and Roofing for the period between October 1978 and March 1979, D & B failed to sustain section 162 expenses in excess of 15 percent of rental income and the investment tax credit is disallowed. With respect to the lease between D & BJ Associates and F.J.A. Christiansen, the Grove crane was not new section 38 property within the meaning of section 46 in the hands of the lessee. Thus, the investment tax credit is unavailable to both of the lessors with respect to the Grove crane. Based on the foregoing, we conclude that petitioners properly took the investment tax credit with respect to the leased property except with respect to the Grove crane. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Subsection 46(e)(3) provides in pertinent part: (3) Noncorporate Lessors. -- A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if -- (A) the property subject to the lease has been manufactured or produced by the lessor, or (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property) which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property.↩
3. Perry v. Commissioner,T.C. Memo. 1987-447; Hoisington v. Commissioner,T.C. Memo. 1984-375; Corkery v. Commissioner,T.C. Memo. 1985-311; Hunter v. Commissioner,T.C. Memo. 1985-271; Sanders v. Commissioner,T.C. Memo. 1984- 511, affd. by unpublished opinion 770 F.2d 174 (11th Cir. 1985); Peterson v. Commissioner,T.C. Memo. 1982-442↩.