JAMES N. RUSSELL AND MARILYN B. RUSSELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Russell v. Commissioner
Docket No. 27660-87
United States Tax Court
T.C. Memo 1991-269; 1991 Tax Ct. Memo LEXIS 312; 61 T.C.M. (CCH) 2909; T.C.M. (RIA) 91269; June 12, 1991, Filed *312 Decision will be entered for the respondent. Held: The term of the leases of gas cylinders owned by petitioners was indefinite, and thus for purposes of section 46(e)(3)(B) the term was not "less than 50 percent of the useful life of the property." Hauptli v. Commissioner, T.C. Memo 1988-518, revd. and remanded 902 F.2d 1505 (10th Cir. 1990), T.C. Memo 1991-72 (on remand), controlling. Thomas J. Kennedy, for the petitioners. Dale P. Kensinger, for the respondent. WHITAKER, Judge. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioners' Federal income tax liability for the calendar year 1983 in the amount of $ 2,842. The sole issue for decision is whether petitioners are entitled to an investment tax credit under section 46(e)(3)(B) [1] in connection with the purchase during 1983 of compressed gas cylinders for lease to unrelated parties. More specifically, as applied to this case, we must decide whether the terms of the leases entered into are less than one-half of the useful life of the property. *313 FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. This case is related to the investment at issue in Hauptli v. Commissioner, T.C. Memo 1988-518, revd. and remanded 902 F.2d 1505 (10th Cir. 1990), T.C. Memo 1991-72 (on remand), wherein we found on remand that lease terms identical in all material respects to those at issue herein were indefinite for purposes of section 46(e)(3)(B) and thus that the taxpayers there did not qualify for the investment tax credit. The facts in our Hauptli opinions, and the record in that proceeding, are hereby incorporated by this reference to the extent pertinent herein. Petitioners, who are husband and wife, resided in Northfield, Illinois, when their petition was filed. Prior to and during 1983, Brown Welding Supply, Inc. (Brown Welding), promoted investments to a number of individuals by means of which the investors could purchase compressed gas cylinders from manufacturers and, pursuant to agreements with Brown Welding for the management and leasing of the cylinders, lease the cylinders to third parties. Petitioner James N. Russell became involved in one such *314 investment. On March 21, 1983, he entered into an agreement with Brown Welding whereby he retained Brown Welding to assist in the purchase, repair, maintenance, valving, shipping, and renting of cylinders. In April 1983 petitioner, through Brown Welding, purchased 1,500 compressed gas cylinders from Chesterfield Cylinder Company, Inc. (Chesterfield), for a total amount of $ 212,750. The purchase was financed by petitioner's payment of 10 percent in cash, with the remainder payable in installments that totaled $ 2,766 per month, pursuant to three security agreements between petitioner and Chesterfield. Petitioner's obligations under the security agreements were satisfied in full on April 20, 1987, and July 31, 1987. On September 22, 1982, [2] petitioner entered into an agreement to rent the cylinders to Coulter Welding Supply, Inc. (Coulter), and on October 1, 1982, petitioner entered into a similar rental agreement with Greene Welding Supply, Inc. (Greene). Coulter and Greene were unrelated parties dealing at arm's length with petitioner through Brown Welding. Coulter and Greene are each engaged in the welding supply business, and their major business categories are: (a) The *315 sale of welding and cutting equipment, industrial tools and products, and electrodes and supplies (48 percent of revenues); (b) the sale of industrial, medical, and specialty gases (31 percent of revenues); and (c) the rental of compressed gas cylinders (17 percent of revenues). The remaining 12 percent of revenues is derived from delivery charges. Under the rental agreements with Coulter and Greene, petitioner agreed to rent compressed gas cylinders in exchange for per cylinder rental fees that totaled $ 2,645 per month, subject to cost of living adjustments. [3] At no time could the rental exceed 70 percent of the rental charged by a company related to Union Carbide, which was *316 a dominant supplier of cylinders and the gases contained therein at the time. Petitioner was to pay 25 percent of the rental payments he received to Brown Welding. The lessees had options to purchase any or all of the cylinders at then-current prices adjusted in relation to the number of months the lessees had made payments under the leases. With regard to the length of their terms, the rental agreements provided in pertinent part: 2. This Agreement shall be effective as of the date hereof. The initial term of this agreement shall be five (5) years ("Initial Term") from the Delivery Date specified in Paragraph 4 of this Agreement, and shall remain in force from year to year after the expiration of the Initial Term until terminated as hereinafter provided. Either party may terminate this agreement as of the expiration of the Initial Term or as of any annual anniversary date thereafter by giving not less than twelve (12) months prior written notice to the other party. [Emphasis added.]
The leases contained no option to renew. At the time the leases were entered into, there was no predetermined plan as to whether the leases would remain in effect at the end of the *317 initial term or would be terminated by either party. The compressed gas cylinders at issue are portable and weigh between 116 and 146 pounds each. They consist of a metal cylinder, with collar and cap, fitted at one end with a replaceable valve for regulation of the flow of gas. They were ordered in a variety of colors specified by Coulter *318 and Greene. They were marked with the name "Coulter Welding" and "Greene Welding." Each cylinder is identified by a serial number stamped thereon. The gas cylinders, other than the attached valves, have no movable parts and are quite durable. They have a physical life of over 35 years unless lost or unusually damaged. All 1,500 of petitioner's cylinders were placed in service in 1983. The gas cylinders leased by petitioner to Coulter and Greene were delivered directly from the manufacturer to the lessees. The cylinders leased by petitioner to Coulter and Greene were released on a monthly basis by Coulter and Greene to their customers to store the gases which they purchased from Coulter and Greene. Petitioners filed their Federal income tax return for the taxable year 1983 on May 31, 1984. It was prepared on the cash receipts and disbursements method of accounting. On that return petitioners claimed an investment tax credit in the amount of $ 22,216, $ 21,275 of which was based upon Mr. Russell's purchase and lease of the aforementioned gas cylinders. On May 19, 1987, respondent timely issued to petitioners a notice of deficiency which disallowed the portion of the investment *319 tax credit taken on petitioners' 1983 return that was in connection with the gas cylinders. Petitioners timely filed a petition with this Court. In their petition, petitioners alleged that respondent incorrectly disallowed their investment tax credit, that assessment of the deficiency was barred by the statute of limitations, and that respondent erred in conducting a second inspection of petitioners' books of account in violation of section 7605(b). The parties have stipulated that respondent properly instituted the examination of petitioners' income tax liability for 1983 as required by section 7605(b) and that the notice of deficiency upon which the instant case is based is not barred by the statute of limitations. They also have stipulated that the testimony in Hauptli v. Commissioner, T.C. Memo 1988-518, of Mr. Stewart R. Horejsi, the president of Brown Welding, is admissible and shall be treated for all purposes as if he had so testified herein. They additionally have stipulated that the deposition of Mr. Bruce Howard, who was a principal of the lessee in Hauptli v. Commissioner, supra, is admissible and shall be treated as if it were the testimony *320 of the principals of Coulter and Greene herein. OPINION The parties are in agreement that the sole issue to be decided herein is whether petitioners are entitled to an investment tax credit under section 46(e)(3) in connection with Mr. Russell's purchase of the cylinders. That section allows an investment tax credit to a noncorporate lessor only where either the property subject to the leases has been manufactured or produced by the lessor (which is not the case here), or where the terms of the leases are less than 50 percent of the useful life of the subject cylinders. [4] Thus, our determination depends upon our findings concerning the terms of the leases and the useful life of the cylinders for purposes of section 46. For the reasons stated below, we need only to reach the first question as to the terms of the leases, for in this case it is dispositive. *321 In our decision on remand in Hauptli v. Commissioner, T.C. Memo 1991-72, we concluded that the leases before us (which were identical in all material respects to those at issue here) were for an indefinite term. Consequently, leases with indefinite terms were in excess of one half of the useful life of the cylinders (regardless of its duration) and, therefore, the cylinders at issue did not qualify for the investment tax credit. We found the leases to be indefinite because: (1) The leases provided that "after the initial term [they] would continue from year to year until terminated"; and (2) "there was no understanding or agreement between the parties to the leases as to whether the leases would be allowed to continue in effect or be terminated at the end of the 5-year initial term." Hauptli v. Commissioner, T.C. Memo 1991-72, 1991 Tax Ct. Memo LEXIS 105, 61 T.C.M. (CCH) 1964 at 1965, T.C.M. (RIA) 91072 at 358 (quoting Hauptli v. Commissioner, T.C. Memo 1988-518, 1988 Tax Ct. Memo LEXIS 545, 56 T.C.M. (CCH) 583, 585, T.C.M. (RIA) 88518 at 2649). In reaching our conclusion that the leases were indefinite, we relied in part upon our opinion in Ridder v. Commissioner, 76 T.C. 867 (1981), *322 which held that a lease with no fixed term that could be terminated upon 30 days' notice or upon mutual consent of the parties was indefinite. We also applied the "realistic contemplation" of the parties test of Borchers v. Commissioner, 95 T.C. 82, 88 (1990), to conclude that the leases were for an indefinite term. We reach the same conclusion here. Petitioners argue that the testimony of Mr. Horejsi, the president and chief executive officer of Brown Welding, shows that petitioner (through Brown Welding) intended to renegotiate the price at which the cylinders would be rented at the end of the 5-year initial term. This requires us, they contend, to treat the lease as being subject to a 5-year term. However, we do not read Mr. Horejsi's testimony to say that the leases would clearly be terminated at the end of the initial term; rather, he stated that "it was our intent that as soon as we felt the economic conditions would allow, we intended to get our rental rate back up to the same rate that Union Carbide was charging." Economic conditions being what they are, we cannot read this self-serving statement to be a clear expression of Brown Welding's or petitioner's *323 intent at the time the leases were entered into to cancel the leases at the end of the 5-year initial term and renegotiate the leases at a higher price. To the contrary, the testimony of the president of the lessee in Hauptli v. Commissioner, supra, which the parties have stipulated to be the same as the positions of the lessees here, indicates that the lessees did not have any fixed intention one way or the other at the time they signed the leases. Accordingly, petitioners have failed to convince us that the parties' "realistic contemplation" was to terminate the leases at the end of the initial term. Thus, they have not succeeded in demonstrating that they have met the 50 percent requirement of section 46(e)(3)(B) for the same reasons as we stated in our Hauptli opinion on remand. Despite the identical nature of the facts before us and those in Hauptli v. Commissioner, supra, petitioners argue that the outcome of the instant case should be different because the Seventh Circuit (the circuit to which an appeal in the instant case would lie) in McNamara v. Commissioner, 827 F.2d 168 (7th Cir. 1987), vacating and remanding a Memorandum Opinion *324 of this Court, held that a lease with a fixed term of less than 50 percent of the useful life of the subject property should not be disregarded unless the lease was a "sham." 827 F.2d at 172. The Court of Appeals for the Seventh Circuit held that the "realistic contemplation" of the parties that the lease may be renewed beyond its stated term would not cause that Court to disregard the stated term of the lease unless there was some evidence that all economic risks of the underlying property had been shifted to the lessee. The appeals court then vacated and remanded the case to the Tax Court to determine whether the leases were "shams" -- i.e., whether there was a fixed intention to renew the leases "on the same or substantively identical terms." 827 F.2d at 172. Petitioners here contend that we must follow McNamara and should hold that the leases were not shams and that, under the "economic risk" rule of that case, the economic risks of owning the cylinders were not shifted with certainty from petitioner to his lessees for any period beyond the 5-year initial term. Respondent urges that he is not seeking to ignore the stated terms of the instant *325 leases but would treat the leases as indefinite by their very terms. Accordingly, he contends, McNamara, if anything, emphasizes that the express terms of the leases are controlling and should be disregarded only in carefully defined circumstances. We hold that McNamara is distinguishable from this case because the terms of the leases are materially different. [5] In McNamara, the lease was for a fixed term that was less than 50 percent of the useful life of the property, and it had to be negotiated anew upon expiration of that term. 827 F.2d at 170. In the instant case, the leases were not for a fixed period; they expressly provided for an "initial term" and then "remain[ed] in force * * * until terminated." (Emphasis added.) At the end of the 5-year initial term, the parties herein had the options of ending the lease relationship, renegotiating the lease terms, or doing nothing. If they did nothing the leases continued to be in force. Thus, unlike in McNamara, there is no "renewal" for us to predict -- no renewal was necessary because the leases did not end at a fixed termination date. Accordingly, there is no need to determine whether we *326 should disregard the leases as "shams" as respondent attempted to do in McNamara; instead we uphold the literal terms of the leases and hold, as we did in Hauptli, that they were indefinite. We further note that McNamara did not reject the "realistic contemplation" test in favor of the "economic risk" rule to be applied in all contexts, as petitioners imply in their brief. Rather, the Court of Appeals' holding is expressly applied to the situation where "the stated lease term in a written lease document satisfies the 50 percent requirement" and one of the parties is seeking to disregard the stated fixed term. 827 F.2d at 172. See Hoisington v. Commissioner, 833 F.2d 1398, 1404 (10th Cir. 1987), affg. a Memorandum Opinion of this Court (Court does not view McNamara as a test for determining length of all lease terms). Thus it is not contrary to McNamara to use the "realistic contemplation" analysis here. [6]
*327 For these reasons, the lease terms were in excess of one-half of the useful life of the cylinders, and petitioners do not qualify for the investment tax credit. Decision will be entered for the respondent. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Because the parties have not done so, we attach no significance to the fact that the rental agreements were entered into prior to petitioner's agreement with Brown Welding or petitioner's purchase of the subject cylinders. Under the terms of the rental agreements, petitioner was not obligated to deliver any cylinders if unable to do so.↩
3. There appears to be an unexplained discrepancy in the record between the total number of cylinders purchased by petitioner (1,500) and the number leased by him to Coulter (1,000) and Greene (1,000). In connection with the Coulter lease, petitioner purchased 1,000 cylinders and agreed to lease the same number of cylinders to Coulter. However, in connection with the Green lease, petitioner purchased 500 cylinders, yet apparently was responsible for supplying Greene with 1,000 cylinders. We note in connection therewith that the Greene lease was entered into by petitioner and the Delmas A. Jackson Trust as lessors, and we assume that the Trust supplied the other 500 cylinders.↩
4. The parties have stipulated that the other requirement of section 46(e)(3)(B), that the deductions allowed to the lessor under section 162 exceed 15 percent of the rental income produced by the property, has been met.↩
5. See Perry v. Commissioner, T.C. Memo 1987-447, affd. 855 F.2d 859 (8th Cir. 1988), distinguishing McNamara v. Commissioner, 827 F.2d 168 (7th Cir. 1987), vacating and remanding a Memorandum Opinion of this Court [Dec. 43,189(M)], on the same ground. For the same reason, we hold that our decision in Sauey v. Commissioner, 90 T.C. 824 (1988), affd. 881 F.2d 1086↩ (11th Cir. 1989), also cited by petitioners, is inapposite.
6. The First Circuit does not agree with the McNamara decision in the context of a fixed term lease and has held that the "realistic contemplation" test should be used. See Connor v. Commissioner, 847 F.2d 985 (1st Cir. 1988), affg. a Memorandum Opinion of this Court. If McNamara v. Commissioner, supra, were directly on point, we would, of course, be required to follow it under the rule in Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). But because of the material difference in the lease terms, Golsen↩ does not apply.