August J. HAUPTLI, Jr. and Barbara Hauptli, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 89–9001.

United States Court of Appeals, Tenth Circuit.

May 8, 1990.

Thomas J. Kennedy, Kennedy Berkley Yarnevich & Williamson, Salina, Kan., for petitioners-appellants.

Joel A. Rabinovitz, Atty., Tax Div., Dept. of Justice, Washington, D.C. (James I.K. Knapp, Acting Asst. Atty. Gen., Gary R. Allen and Jonathan S. Cohen, Attys. Tax Div. Dept. of Justice, Washington, D.C., with him on the brief), for respondent-appellee.

Before ANDERSON and BRORBY, Circuit Judges, and THEIS,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Taxpayers, August J. and Barbara Hauptli, appeal a decision of the United States Tax Court sustaining an income tax deficiency for the calendar year 1983 in the amount of $13,668. The Tax Court held that the taxpayers improperly claimed an investment credit for compressed gas storage cylinders which they had purchased and leased to a welding supply company. *Hauptli v. Commissioner,* 56 T.C.M. (CCH) 583 (1988). The sole issue on appeal is whether the Tax Court correctly concluded that the term of the lease agreement exceeded 50% of the cylinders' useful life, thus disqualifying Hauptli from any invest-

Cir.1990); *United States v. Beaulieu,* 893 F.2d 1177, 1181, n. 7 (10th Cir.1990).

* The Honorable Frank G. Theis, Senior Judge, United States District Court for the District of Kansas, sitting by designation.

ment credit. 26 U.S.C. § 46(e)(3).[1] Because the Tax Court incorrectly determined the useful life of the cylinders, we reverse and remand for further proceedings.

## BACKGROUND

In 1983, the taxpayers purchased 1,000 compressed gas cylinders, used to store various gases such as oxygen, acetylene, argon, nitrogen, carbon dioxide, and helium. Once stored in these cylinders, the gases have a wide range of applications in numerous industries and in medical offices and hospitals. The gas cylinders are extremely durable and generally have a physical life exceeding thirty-five years. Stipulation of Facts, R. Vol. I at Tab 7, p. 4.

The taxpayers leased the cylinders for an initial term of five years to A & R Welding Supply Co. ("A & R"). In turn, A & R rented the cylinders "on a monthly basis to A & R Welding's customers to contain the gases which [the customers] purchased [from A & R]." Stipulation of Facts, R. Vol. I at Tab 7, p. 3. The cylinders were all placed in service in 1983.

The taxpayers claimed an investment tax credit based on the purchase price of the cylinders against their income tax for the calendar year 1983. The Commissioner disallowed the credit, explaining in the Notice of Deficiency that they had "not established that this credit is computed on any amount which qualifies under the provisions of the Internal Revenue Code for investment tax credit." R. Vol. I at Tab 2, Exhibit A p. 3. The taxpayers then petitioned the Tax Court for relief.

The Tax Court agreed with the Commissioner that the taxpayers were not entitled to the investment credit because the term of the lease with A & R was for more than one-half of the useful life of the property. In concluding that taxpayers were ineligible for the tax credit, the Tax Court applied a "useful life" of nine years for purposes of testing whether the term of the lease agreement exceeded 50% of the cylinders'

useful life under § 46(e)(3)(B). On appeal taxpayers challenge the imposition of a nine year useful life, contending that there is no support in the law or regulations for a period that short. The relevant facts involved are undisputed; we review the Tax Court's legal conclusions *de novo*. *Miller v. Commissioner*, 836 F.2d 1274, 1277 (10th Cir.1988).

## DISCUSSION

In general, the "useful life" of the cylinders, for the purposes of testing the taxpayers' eligibility for the investment tax credit, is "the class life prescribed by the Secretary which reasonably reflects the anticipated useful life of property to the industry or other group." 26 U.S.C. § 167(m)(1) (as referenced in § 168(i)(1)(A) (defining "class life" as used in § 168(g)(2) which is referenced in turn by § 46(e)(3)(B))). Revenue Procedure 83–35, 1983–1 C.B. 745 (1983) establishes asset guideline classes applicable for the year 1983, and sets the life for each guideline class. It is undisputed that none of the specific class lives established by the secretary relates to cylinders or to the business activity of renting cylinders. In such instances Treas.Reg. § 1.167(a)–11(e)(3)(iii), provides that "the asset guideline class for such property shall be determined as if the property were owned by the lessee." Accordingly, the Tax Court looked to A & R, the taxpayers' lessee. The court reasoned that A & R was primarily engaged in wholesale and retail trade and sales of compressed gases and welding supplies. Therefore, the court applied asset guideline class 57.0 which includes assets used in "Distributive Trades and Services" to compute a nine year class life for the cylinders. *See* Rev.Proc. 83–35, 1983–1 C.B. 745, 762. It is on this point that we diverge from the Tax Court.

■ While A & R's primary business is as described by the Tax Court, A & R is also a lessor of the cylinders, on a sublease

---

**1.** 26 U.S.C. § 46(e)(3) provides, in part:
"A credit shall be allowed ... to a person which is not a corporation with respect to property of which such person is the lessor
only if—(B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property."

basis, to its customers. The parties stipulated and the Tax Court found that A & R rented tanks on a monthly basis, deriving substantial separate income from that activity. The revenue from the monthly rental of cylinders represented approximately 17% of A & R's gross revenue—more than one-half of the revenue generated by the actual sale of compressed gas. Stipulation of Facts, R. Vol. I at Tab 7, p. 3. Rental income was separately accounted for on A & R's books. The rental terms apparently were set out in written agreements between A & R and its customer-lessees.

Since A & R was a lessor of the cylinders then, just as in the case of the taxpayer-lessors, no guideline class applied, and the Tax Court was obligated to look past A & R to the activities of *its* lessees for a guideline life, as prescribed by Treas.Reg. § 1.167(a)–11(e)(3)(iii). The Tax Court attempts to avoid that result by reasoning that the cylinders were "used" by A & R in its distribution business. That is, providing tanks to customers facilitated the sale of compressed gases, and was only an incidental (though necessary) component of the gas sales. In other words, the Tax Court erected a primary business test to determine if a person is a lessor. No such test is discernible on the face of the governing regulation, which provides:

> "*In the case of a lessor of property,* unless there is an asset guideline class in effect for *lessors of such property,* the asset guideline class for such property shall be determined as if the property were owned by the lessee. However, in the case of an asset guideline class based upon the type of property ... as distinguished from the activity in which used, the property shall be classified without regard to the activity of the lessee."

Treas.Reg. § 1.167(a)–11(e)(3)(iii) (emphasis added). The Tax Court cites no authority for its restrictive definition of the term "lessor of property" in the regulation, and we decline to adopt it on the basis of the record in this case.[2]

Furthermore, the basic logic involved in setting class lives for leased assets also suggests that we should look to the activities of the end user lessees of these tanks. As a practical matter it is that final "use," not the filling and delivery of the tanks by A & R which will eventually determine the physical and economic life of these cylinders. The frequency with which the tanks are filled and the physical conditions under which they must perform depend on the nature of the end users' activities, not A & R's operations.

Accordingly, we hold that the Tax Court erred in looking to A & R to establish a class life for these cylinders. It was required to look to A & R's lessees.

■ The Tax Court made no findings of fact concerning the business activity of the end user lessees of these gas cylinders. If it is impossible on remand to determine a class life, either because the activities of the end users cannot be ascertained, or because no appropriate asset guideline class exists for the broad and differing spectrum of activities in which the tanks are used, then the useful life of the cylinders could still be determined in accordance with the procedure described in Rev.Proc. 86–36, 1986–2 C.B. 596. That procedure applies solely for the purpose of determining the maximum term of a lease permissible for investment tax credit purposes where there is no applicable class life prescribed for the asset involved. In those situations, the estimated useful life of the property should be determined in accordance with traditional rules of estimating actual useful life in the trade or business. *See id.* Whatever class life or other useful life the Tax Court ultimately uses, the statute clearly provides that the time period must "reasonably reflect ... the anticipa-

**2.** The Tax Court interpreted "the word 'lessee' in [§ 1.167(a)–11(e)(3)(iii)] to refer to the entity which is actually using the cylinders in its gas distribution business which is A & R ..." rather than the ultimate consumer of the gas. R. Vol. I at Tab 10, p. 13. This reasoning is unpersuasive. Insofar as the cylinders are essential to the operation involved, both A & R and the ultimate consumers are "using" the cylinders for gas storage. However, inasmuch as the actual physical wear and tear on the cylinders is concerned, the majority of the cylinders' "use" will be in the hands of the consumers, not A & R.

ted useful life of [the] property to the industry...." 26 U.S.C. § 167(m)(1).

The Tax Court did not reach the Commissioner's alternate contention below that the term of the lease between the taxpayers and A & R was in excess of the original five year period by virtue of the automatic one-year renewal built into the agreement. That issue is also open for consideration on remand.

## CONCLUSION

The memorandum opinion of the Tax Court is REVERSED and the case is REMANDED for further proceedings consistent herewith.