WALGREEN CO. & SUBSIDIARIES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6634–92.    Filed November 10, 1994.

*David J. Duez, Lydia R.B. Kelley,* and *Gregory F. Jenner,* for petitioner.

*James S. Stanis, Patricia Pierce Davis,* and *James M. Cascino,* for respondent.

NIMS, *Judge:* Respondent determined deficiencies in petitioner's Federal income taxes for petitioner's taxable years ending August 31, 1983, and August 31, 1984, in the amounts of $408,711 and $529,445, respectively. After concessions by petitioner, the issues for decision are: (1)

Whether asset depreciation range (ADR) class 57.0 (ADR class 57.0), prescribed in Rev. Proc. 83–35, 1983–1 C.B. 745, 762, includes section 1250 property; and (2) if ADR class 57.0 does include section 1250 property, whether that class differentiates between items of section 1250 property that are structural and nonstructural components of a building.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in issue.

At the time petitioner filed its petition its principal place of business was located in Deerfield, Illinois.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

During the years in question, petitioner operated retail drugstores throughout 30 States. Petitioner also operated a chain of Wags restaurants. Through its drugstores, petitioner provides retail pharmacy services and sells health and beauty aids, proprietary drugs, liquor, tobacco, general merchandise, and food items. The buildings in which petitioner operates its drugstores and restaurants are either: (1) Owned by petitioner; (2) built by petitioner, sold to a third party, and leased back to petitioner; or (3) leased by petitioner from a third party.

The present dispute pertains to depreciation deductions claimed by petitioner with respect to certain real property leasehold improvements (section 1250 leasehold improvements) made by petitioner between September 1, 1980, and August 31, 1984. These improvements were utilized by petitioner in the operation of the leased buildings as either drugstores or restaurants. Among other items, the section 1250 leasehold improvements in dispute consist of the following items:

(1) Interior partitions made up of drywall, glass, and metal;

(2) miscellaneous millwork, carpentry, lumber, metals, steel, and paint;

(3) acoustic, drywall, and plaster ceilings;

(4) restroom accessories;

(5) electric lighting fixtures;

(6) interior floor finishings, including carpet, vinyl, rubber tile, ceramic tile, quarry tile, and terrazzo tile; and

(7) decor finishes, including wood trim, decorative steel work, and simulated structures.

Because of the large number of leasehold improvements involved in this case, the parties agreed to survey petitioner's drugstores and restaurants on a sample basis. Experts for both petitioner and respondent surveyed a sample group consisting of 10 drugstores and two restaurants. Based on this survey and prior to the issuance of the notice of deficiency, the parties reached an agreement that 5 percent of the leasehold improvements to petitioner's drugstores and 10 percent of the leasehold improvements to the restaurants consisted of personal property (section 1245 property) that was properly depreciated by petitioner. The parties also stipulated that the remaining 95 percent of the leasehold improvements pertaining to the drugstores and 90 percent of the leasehold improvements pertaining to the restaurants, which are the subject of the present dispute, consisted of section 1250 property as defined by section 1250(c). The total cost to petitioner of the section 1250 leasehold improvements in dispute is summarized in the following table:

| Period placed in service | Drugstores | Restaurants | Total |
|---|---|---|---|
| Sept. 1, 1980 to Dec. 31, 1980 | $2,815,586 | $139,009 | $2,954,595 |
| Jan. 1, 1981 to Aug. 31, 1981 | 7,241,184 | 204,989 | [1]7,446,173 |
| Sept. 1, 1981 to Aug. 31, 1982 | 9,069,580 | 337,003 | 9,406,583 |
| Sept. 1, 1982 to Aug. 31, 1983 | 9,238,328 | 384,818 | 9,623,146 |
| Sept. 1, 1983 to Aug. 31, 1984 | 16,191,156 | 683,296 | 16,874,452 |
| | | | 46,304,949 |

[1]The parties' stipulation of facts contained a mathematical error in that they incorrectly totaled the leasehold improvements placed in service in 1981 as $7,307,164, whereas the correct total ($7,446,173) is reflected in the table above.

With respect to the section 1250 leasehold improvements placed in service before January 1, 1981, petitioner claimed depreciation deductions under section 167, under the ADR class life system, using a 7-year useful life for the property.

With respect to the section 1250 leasehold improvements placed in service on or after January 1, 1981, petitioner claimed depreciation deductions under section 168, the accelerated cost recovery system (ACRS), using a useful life of 10 years pursuant to section 168(c)(2)(C)(ii). Petitioner calculated the foregoing useful lives of the section 1250 leasehold improvements based on its belief that the improvements were classified under ADR class 57.0.

For the years in question, ADR class 57.0 "Includes assets used in wholesale and retail trade, and personal and professional services. Includes section 1245 assets used in marketing petroleum and petroleum products". Rev. Proc. 83–35, 1983–1 C.B. 745, 762. Rev. Proc. 83–35 assigned the ADR class 57.0 assets an asset guideline period of 9 years, with a lower limit of 7 years and an upper limit of 11 years. *Id.*

During the trial of this case, each party presented expert witnesses for the purpose of establishing the structural nature of the section 1250 leasehold improvements at issue. This testimony raises questions of fact that become necessary to resolve only if, as a matter of law, we determine that ADR class 57.0 includes any section 1250 property, as urged by petitioner.

## OPINION

Initially, we must determine whether ADR class 57.0 includes section 1250 property. If we decide this issue in the affirmative, we must further determine whether ADR class 57.0 differentiates between section 1250 property that constitutes structural components of a building and section 1250 property that constitutes nonstructural components of a building.

Essentially, petitioner's argument is as follows: (1) ADR class 57.0 includes certain items of section 1250 property that do not constitute the structural shell of a building or an integral part thereof; and (2) approximately 25 percent of petitioner's section 1250 leasehold improvements do not constitute the structural shell of a building or an integral part thereof. On the other hand, respondent contends that the legislative intent behind the applicable depreciation sections prevents section 1250 property from being included in any ADR class unless such class prescribed by the Treasury

Department (Treasury) explicitly contains section 1250 property. Respondent argues that because ADR class 57.0 does not explicitly include section 1250 property, the section 1250 leasehold improvements at issue in this case may not be included in such class.

Section 1250 property is any real property (other than section 1245 property (personal property), as defined in section 1245(a)(3)) which is or has been subject to the depreciation allowance under section 167. Sec. 1250(c). Real property, as used in section 1250(c), includes both "a building or its structural components" and other real property except that which is defined in section 1245(a)(3)(B) and (D). Sec. 1.1250–1(e)(3)(i), Income Tax Regs. The parties agree that the leasehold improvements at issue constitute section 1250 property.

Proper resolution and understanding of this case require a detailed consideration of the statutory and regulatory scheme behind the relevant depreciation sections, as well as the relevant legislative history of certain of those sections.

The section 1250 leasehold improvements at issue straddle two significant time periods: (1) Leasehold improvements placed in service prior to January 1, 1981, and (2) leasehold improvements placed in service on or after January 1, 1981. For the leasehold improvements placed in service prior to January 1, 1981, section 167 governed depreciation deductions taken with respect to such improvements. In the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97–34, 95 Stat. 172, Congress enacted section 168, entitled accelerated cost recovery system, referred to, as previously stated, as ACRS. Prior to ACRS, the useful life of depreciable property was determined by using one of several methods discussed below. For recovery property placed in service after 1980, ACRS provided statutorily prescribed recovery periods. See sec. 168(c)(2). Given the fact that petitioner's section 1250 leasehold improvements straddle two different depreciation regimes, it is necessary to consider both pre-1981 depreciation rules and post-1980 depreciation rules.

*Evolution of the ADR System and ACRS*

For assets placed in service prior to 1971, depreciation deductions were calculated under section 167 based on a useful life that was essentially determined by using a facts and

circumstances approach. See sec. 1.167(a)–1(b), Income Tax Regs. In 1962, Treasury issued Rev. Proc. 62–21, 1962–2 C.B. 418, which set out various guidelines for determining useful lives of depreciable assets within certain classes. Following the guidelines in Rev. Proc. 62–21, taxpayers could determine useful lives of depreciable assets in a manner that would eliminate the potential for dispute with the Internal Revenue Service (Service) as to the appropriate useful lives for certain depreciable assets. The useful lives regimen prescribed in Rev. Proc. 62–21 was the predecessor to the ADR system established for assets placed in service after 1970.

On June 23, 1971, Treasury published new regulations (the 1971 regulations), section 1.167(a)–11, Income Tax Regs., 36 Fed. Reg. 11924 (June 23, 1971), which established the ADR system for property placed in service after December 31, 1970.

In 1971, Congress enacted the Revenue Act of 1971 (1971 Act), Pub. L. 92–178, 85 Stat. 497. Section 109(a) of the 1971 Act, 85 Stat. 509, added section 167(m) to the Internal Revenue Code, which gave legislative life to the ADR system and delegated authority to Treasury to prescribe asset guideline classes. Section 167(m), as added by the 1971 Act, provided in pertinent part:

SEC. 167(m). CLASS LIVES.—

(1) IN GENERAL.—In the case of a taxpayer who has made an election under this subsection for the taxable year, the term "reasonable allowance" as used in subsection (a) means (with respect to property which is placed in service during the taxable year and which is included in any class for which a class life has been prescribed) only an allowance based on the class life prescribed by the Secretary or his delegate which reasonably reflects the anticipated useful life of that class of property to the industry or other group. The allowance so prescribed may (under regulations prescribed by the Secretary or his delegate) permit a variance from any class life by not more than 20 percent * * * of such life.

\* \* \* \* \* \* \* \* \*

(3) MAKING OF ELECTION.—An election under this subsection for any taxable year shall be made at such time, in such manner, and subject to such conditions as may be prescribed by the Secretary or his delegate by regulations.

[1971 Act sec. 109(a)(1), 85 Stat. 509.]

Under the ADR system, useful lives of depreciable property could be selected by taxpayers from a range between 80 per-

cent and 120 percent of the guideline lives prescribed by Treasury for particular classes of depreciable property. Sec. 1.167(a)–11(b)(4), Income Tax Regs. The ADR system was elective, and for each year that a taxpayer elected the ADR system it was to apply to all depreciable property placed in service during the year of election. Sec. 167(m)(1) as added by the 1971 Act, 85 Stat. 509; sec. 1.167(a)–11(b)(5), Income Tax Regs.

Section 109(e)(1) of the 1971 Act, 85 Stat. 510, provided a 3-year transition rule that allowed taxpayers to exclude buildings and other section 1250 property placed in service between January 1, 1971, and December 31, 1973, from the ADR system even though the taxpayer had elected the ADR system for non-section 1250 property placed in service during such years. Specifically, section 109(e)(1) of the 1971 Act provided:

(e) TRANSITIONAL RULES.—

(1) REAL PROPERTY.—In the case of buildings and other items of section 1250 property for which a separate guideline life is prescribed in Revenue Procedure 62–21 (as amended and supplemented), the class lives first prescribed by the Secretary of the Treasury or his delegate under section 167(m) of the Internal Revenue Code of 1954 shall be the same as the guideline lives for such property in effect on December 31, 1970. Any such property which is placed in service by the taxpayer during the period beginning on January 1, 1971, and ending on December 31, 1973 (or such earlier date on which a class life subsequently prescribed by the Secretary of the Treasury or his delegate under such section becomes effective for such property) may, in accordance with regulations prescribed by the Secretary of the Treasury or his delegate, be excluded by the taxpayer from an election under such section if a life for such property shorter than the class life prescribed in accordance with the preceding sentence is justified under Revenue Procedure 62–21 (as amended and supplemented). [1971 Act sec. 109(e)(1), 85 Stat. 510.]

Essentially, the transition rule removed buildings and other section 1250 property from the ADR system and allowed taxpayers to determine useful lives for property placed in service during the transition period in accordance with Rev. Proc. 62–21, 1962–2 C.B. 418, until the earlier of the date on which: (1) The 3-year transition period expired; or (2) Treasury prescribed guideline classes explicitly relating to section 1250 property. Section 1250 property placed in service after the earlier of these dates would fall within the ADR system. In addressing the temporary removal of section 1250 prop-

erty from the ADR system the Senate Finance Committee report stated that

The committee's attention was called to the fact that under the rules of the 1962 guidelines taxpayers in many cases were permitted to depreciate real property over shorter lives than the guideline lives because of the particular facts of the taxpayer's situation. If these taxpayers were, as a condition of electing the class life system, required to include their real property in the election, they would be substantially adversely affected since they would have to use significantly longer lives for the real property than they had used in the past. In view of this, the committee believes it is appropriate to provide a transitional rule for these taxpayers to enable them to make use of the class life system while the Treasury Department studies the general matter of the appropriate lives for real property. Accordingly, * * * in the case of real property placed in service during the 3-year period beginning on January 1, 1971, taxpayers who elect the class life system may exclude from the election real property in cases where for the first year a life shorter than the initially prescribed class life (which is to be the 1962 guideline life) is justified for the asset under the rules of the 1962 guidelines. If the Treasury Department subsequently prescribes class lives for real property prior to the end of the 3-year period, it is provided that this transition rule is to terminate with respect to property placed in service after the date on which any such class life becomes effective with respect to it. [S. Rept. 92–437 (1971), 1972–1 C.B. 559, 586.]

On April 23, 1973, Treasury published final regulations, section 1.167(a)–11, Income Tax Regs., 38 Fed. Reg. 9963 (Apr. 23, 1973), which established the ADR system in conformity with the 1971 Act.

In 1974, Congress repealed section 109(e)(1) of the 1971 Act by enacting section 5 of the Act of Jan. 3, 1975 (1974 Act), Pub. L. 93–625, 88 Stat. 2112. Section 5 of the 1974 Act provided in pertinent part:

SEC. 5. APPLICATION OF CLASS LIFE SYSTEM TO REAL PROPERTY.

(a) GENERAL RULE.—In the case of *buildings and other items of section 1250 property (within the meaning of section 1250(c) of the Internal Revenue Code of 1954)* placed in service before the effective date of the class lives first prescribed by the Secretary of the Treasury or his delegate under section 167(m) of such Code for the class in which such property falls, if an election under such section 167(m) applies to the taxpayer for the taxable year in which such property is placed in service, the taxpayer may, in accordance with regulations prescribed by the Secretary of the Treasury or his delegate, elect to determine the useful life of such property—

(1) under Revenue Procedure 62–21 (as amended and supplemented) as in effect on December 31, 1970, or

(2) on the facts and circumstances.

(b) REPEAL OF PRIOR TRANSITIONAL RULE.—Paragraph (1) of section 109(e) of the Revenue Act of 1971 (Public Law 92–178) is hereby repealed.
[Emphasis added.]

As previously indicated, section 167(m) authorized the elective use of the ADR class life system.

As of 1974, Treasury had not yet devised a satisfactory class life system for real property. See S. Rept. 93–1357 (1974), 1975–1 C.B. 517, 523. The report of the Senate Finance Committee provides:

Present law provides that after 1973, the class life system (sometimes referred to as the asset depreciation range or ADR provision) is to apply to real estate. The committee believes that bringing real estate into the ADR system before devising a satisfactory class life system for real estate would be unworkable. As a result, the committee bill does not apply the ADR system to real estate until such time as the Treasury Department develops regulations on a class life system for real estate. [Id., 1975–1 C.B. at 518.]

With the enactment of section 5 of the 1974 Act, Congress again withdrew buildings and other section 1250 property from the application of the ADR system until such time as the Treasury prescribed a class life system for section 1250 property.

In 1981, Congress revamped the applicable depreciation rules as part of Pub. L. 97–34, 95 Stat. 172 (ERTA). Section 201 of ERTA added section 168, entitled as previously noted accelerated cost recovery system. Section 168 at that time provided in pertinent part:

SEC. 168(a). ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction for any taxable year the amount determined under this section with respect to recovery property.

\* \* \* \* \* \* \*

(c) RECOVERY PROPERTY.—For purposes of this title—
(1) RECOVERY PROPERTY DEFINED.—Except as provided in subsection (e), the term "recovery property" means tangible property of a character subject to the allowance for depreciation—
(A) used in a trade or business, or
(B) held for the production of income.
(2) CLASSES OF RECOVERY PROPERTY.—Each item of recovery property shall be assigned to one of the following classes of property:

\* \* \* \* \* \* \*

(C) 10-YEAR PROPERTY.—The term "10-year property" means—

\* \* \* \* \* \* \*

(ii) section 1250 class property with a present class life of 12.5 years or less.

(D) 15-YEAR REAL PROPERTY.—The term "15-year real property" means section 1250 class property which does not have a present class life of 12.5 years or less.

\* \* \* \* \* \* \*

(g) DEFINITIONS.—For purposes of this section—

\* \* \* \* \* \* \*

(2) PRESENT CLASS LIFE.—The term "present class life" means the class life (if any) which would be applicable with respect to any property as of January 1, 1981, under subsection (m) of section 167 (determined without regard to paragraph (4) thereof and as if the taxpayer had made an election under such subsection).

[ERTA sec. 201, 95 Stat. 204, 206–207, 217.]

(We note that for depreciable assets placed in service after March 15, 1984, section 168(c)(2)(D) was amended so as to extend the recovery period for real property to 18 years. Deficit Reduction Act of 1984, Pub. L. 98–369, sec. 111(b)(3)(B), 98 Stat. 632.)

Thus, although ACRS replaced the ADR system for depreciable property placed in service after 1980, the ADR system is still relevant for purposes of determining the recovery period of depreciable property for purposes of calculating the applicable depreciation deduction under ACRS. Sec. 168(c)(2), (g)(2). This is where the present dispute arises. Although both parties agree that the leasehold improvements constitute section 1250 property as defined in section 1250(c), they disagree as to whether the leasehold improvements are 10-year recovery property (see discussion which follows), or 15-year real property as defined in section 168(c)(2). Petitioner argues that a portion of the section 1250 leasehold improvements are described in ADR class 57.0 with an ADR midpoint life of 9 years; thus, under section 168(c)(2)(C)(ii) they are collectively 10-year property. Respondent argues that the section 1250 leasehold improvements are not described in any ADR class; thus, under section 168(c)(2)(D) they are collectively 15-year real property.

The parties have agreed that any of the leasehold improvements determined not to be included in ADR class 57.0 shall

be classified as either land improvements or buildings and shall have a 15-year recovery period. The parties have further agreed that the same percentage, if any, of the post-1980 leasehold improvements determined to be included in ADR class 57.0 will be applied to the pre-1981 leasehold improvements.

Before applying the relevant depreciation rules to the issues before us, we must finish our exploration of these rules by examining material related to the legislative history of ACRS. The Staff of the Joint Committee on Taxation explained the recovery period for real property under the ADR class life system and ACRS as follows:

> *Useful lives.*—Under prior law [ADR system], depreciation of real property could be determined by estimating useful lives under a facts and circumstances test or by using guideline lives prescribed under Revenue Procedure 62–21, as in effect on December 31, 1970. Guideline lives were not prescribed for real property under the ADR system, except for certain structures (such as gas stations, farm buildings, and theme park structures).
>
> * * * * * * *
>
> Real property, as that term is used in this explanation, refers to property described in section 1250(c) other than property with an ADR midpoint life of 12.5 years or less as in effect on January 1, 1981, and other than residential manufactured homes. Thus, real property generally includes property described in section 1250(c) that either had an ADR midpoint life of 13 years or more as in effect on January 1, 1981, or had no ADR midpoint life as of January 1, 1981 (with relatively few exceptions, ADR lives were not assigned to buildings and structures). * * *
>
> [Staff of Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 68, 83 (J. Comm. Print 1981).]

## Application of the ADR System and ACRS to this Case

Essentially, the crux of this case boils down to a single question—under section 168(c)(2) are the section 1250 leasehold improvements 10-year recovery property or 15-year real property? In accordance with section 168(c)(2) and (g)(2), this question turns on whether the section 1250 property improvements had a class life of 12.5 years or less under section 167(m), the ADR system, in effect as of January 1, 1981.

Section 5 of the 1974 Act unambiguously provides that, as to section 1250 property placed in service before Treasury has prescribed a class life for such property, the taxpayer may elect to determine the useful life of the property under

Rev. Proc. 62–21, 1962–2 C.B. 418, or on the basis of facts and circumstances. Such a provision was necessary because "useful life" could not be determined by reference to a class life which, due to Treasury's inaction, did not exist. And as noted above, the Senate Finance Committee flatly interpreted the statutory language to mean that the ADR system was not to apply to real estate (which, of course, includes section 1250 property) until Treasury developed regulations on a class life system for real estate.

We think Congress intended that the class life for categories of section 1250 property had to be explicitly prescribed, and not merely by inference, particularly in light of the difficulties that already had been experienced by Treasury in establishing workable class lives for section 1250 property. Furthermore, we do not believe that petitioner's result can be achieved, even by inference, for reasons set out below. And, along these same lines, we also conclude that ADR class 57.0 was not, contrary to petitioner's belief, intended to include any section 1250 property.

We believe that in order to best explicate this result, it would be helpful to describe the various revenue procedures issued over the years as they relate to the class life of petitioner's section 1250 leasehold improvements and the various permutations in the depreciation rules.

Had this case involved leasehold improvements placed in service prior to the effective dates of the 1971 and 1974 Acts, we would have been required to reach the interesting question that petitioner asks us to consider; namely, what do the Service's revenue procedures mean when they refer to a "building", its "structural shell", and the "integral parts thereof"? Prior to the creation of the ADR system, Rev. Proc. 62–21 served as the statement of the Service's administrative rules, voluntary in their application by the taxpayer's election, regarding asset guideline classes.

Rev. Proc. 62–21, 1962–2 C.B. at 419, sets out two particular classes of property that are relevant for our purposes. Group 1, entitled Guidelines for Depreciable Assets Used by Business in General, described class 4, Buildings, which

*Includes the structural shell of the building and all integral parts thereof.* Includes equipment which services normal heating, plumbing, air conditioning, fire prevention and power requirements, and equipment such as

elevators and escalators. [Rev. Proc. 62–21, 1962–2 C.B. at 419; emphasis added.]

Rev. Proc. 62–21 prescribed a 50-year useful life for buildings that were stores. 1962–2 C.B. at 420.

Group 2, Guidelines for Nonmanufacturing Activities, Excluding Transportation, Communications, and Public Utilities, contained class 8, Wholesale and Retail Trade, which "Includes purchasing, selling and brokerage activities at both the wholesale and retail level and related assembling, sorting and grading of goods." *Id.* at 422. Group 2 class 8 assets were assigned a 10-year useful life. *Id.* Rev. Proc. 62–21 specifically provided that the classes prescribed in group 2 excluded any assets included in a class prescribed in group 1. *Id.* at 420.

Rev. Proc. 62–21 did not make reference to whether an asset was characterized as section 1245 property or section 1250 property. Thus, under Rev. Proc. 62–21, the section 1250 leasehold improvements could have been included in group 2 class 8, Wholesale and Retail Trade, provided they did not constitute part of the "structural shell of the building" or "integral parts thereof", as provided in group 1 class 4, because the leasehold improvements of the type here at issue would have to be placed in one category or the other. Thus, as of the time that Rev. Proc. 62–21 was issued, petitioner's section 1250 leasehold improvements had a class life of either 10 or 50 years.

For the most part, Rev. Proc. 62–21 was replaced by the ADR system first established in the 1971 regulations. In Rev. Proc. 71–25, 1971–2 C.B. 553, the Service first prescribed the asset guideline classes referred to in the 1971 regulations. Assets used in wholesale and retail trade were assigned to class 50.0, Wholesale and retail trade, described as follows:

Includes assets used in carrying out the activities of purchasing, assembling, storing, sorting, grading, and selling of goods at both the wholesale and retail level. Also includes assets used in such activities as the operation of restaurants, cafes, coin-operated dispensing machines, and in brokerage of scrap metal. [1971–2 C.B. at 565.]

Class 50.0 was the equivalent of former group 2 class 8, Wholesale and Retail Trade, prescribed in Rev. Proc. 62–21, *supra*. See *Hauptli v. Commissioner*, T.C. Memo. 1988–518, revd. and remanded 902 F.2d 1505 (10th Cir. 1990). Assets

used in the service industry were assigned to class 70.0, Services, described in pertinent part as follows:

Includes assets used in the provision of personal services * * *. Includes assets used in the provision of professional services such as those offered by doctors, dentists, lawyers, accountants, architects, engineers, and veterinarians. * * * [Rev. Proc. 71–25, 1971–2 C.B. at 565.]

Assets described in both class 50.0 and class 70.0 were assigned an ADR midpoint class life of 10 years. *Id.*

At the time Rev. Proc. 71–25 (the Service's next set of guidelines) was issued, which was prior to enactment of the 1971 Act, the status of section 1250 property within the ADR system was unclear. Unlike Rev. Proc. 62–21, Rev. Proc. 71–25 did not prescribe a separate class for buildings. Treasury's inability to successfully incorporate section 1250 property into the ADR system concerned Congress, as evidenced by section 109(e)(1) of the 1971 Act, which created the 3-year transition rule allowing exclusion of buildings and other section 1250 property from the ADR system.

Thus, prior to the effective date of the 1971 Act, under Rev. Proc. 71–25 petitioner's section 1250 leasehold improvements could have had a 10-year class life provided they fit within the description of class 50.0, Wholesale and retail trade, or class 70.0, Services. However, regardless of the leasehold improvements' class life under Rev. Proc. 71–25, as section 1250 property they were removed from the ADR system by section 109(e) of the 1971 Act.

In accordance with section 109(e)(1) of the 1971 Act, the Service actually did subsume some section 1250 property into the ADR system in its next pronouncement, Rev. Proc. 72–10, 1972–1 C.B. 721. In Rev. Proc. 72–10, 1972–1 C.B. at 722, the Service prescribed four classes relevant to our analysis: (1) Class 00.3, Land Improvements; (2) class 50.0, Wholesale and retail trade; (3) class 65.0, Building Services; and (4) class 70.0, Services. Class 00.3, Land Improvements:

Includes paved surfaces such as sidewalks and roads, canals, waterways, drainage facilities and sewers; wharves and docks; bridges; all fences except those included in specific classes described below (i.e., farm and railroad fences); * * * radio and television transmitting towers, and other inherently permanent physical structures added to land *except buildings and their structural components.* [1972–1 C.B. at 722; emphasis added.]

Class 00.3 was assigned a 20-year class life and was to apply to all assets described therein regardless of the industry in which they were utilized unless stated otherwise. *Id.* Additionally, class 00.3 was established for a 3-year transition period in accordance with section 109(e)(1) of the 1971 Act. *Id.*

Class 50.0, Wholesale and retail trade, was prescribed verbatim as it appeared in Rev. Proc. 71–25 (the revenue procedure by which the Service first prescribed asset guideline classes referred to in the initial creation of the ADR system by the 1971 regulations). *Id.* at 730. Class 70.0, Services, was prescribed virtually identically to the way it was prescribed in Rev. Proc. 71–25. *Id.* at 731. In Rev. Proc. 72–10, the Service also prescribed class 65.0, Building Services, described in pertinent part as

Provision of the services of buildings, whether for use by others or for taxpayer's own account. Assets in the classes listed below *include the structural shells of buildings and all integral parts thereof;* equipment that services normal * * * illumination, * * * and power requirements; * * * and any additions to buildings or their components, capitalized remodeling costs, and partitions both permanent and semipermanent. * * * Depreciation periods for assets used in the provision of the services of buildings and which are not specified below shall be determined according to the facts and circumstances pertinent to each asset, except in the case of farm buildings and other building structures for which a specific class has otherwise been designated. [*Id.* at 730; emphasis added.]

As was the case with class 00.3, Land Improvements, class 65.0, Building Services, was established for a 3-year transition period in accordance with section 109(e)(1) of the 1971 Act. *Id.* Under class 65.0, the Service included class 65.2, Building services for the conduct of wholesale and retail trade, includes stores and similar structures, with a class life of 50 years. *Id.* at 731. Using language similar to that of Rev. Proc. 62–21, class 65.0, prescribed in Rev. Proc. 72–10, brought any section 1250 property that constituted a structural shell of a building or an integral part thereof within the ADR system as authorized by section 109(e)(1) of the 1971 Act.

Prior to the 1974 Act and subsequent to the issuance of Rev. Proc. 72–10, any of petitioner's section 1250 leasehold improvements that constituted "the structural shells of buildings and all integral parts thereof" would have been included

in the ADR system by virtue of the description of class 65.0, Building Services, and class 65.2 (the stores category of building services), prescribed in Rev. Proc. 72–10, with a class life of 50 years. The remaining section 1250 leasehold improvements, not constituting the structural shell of a building or an integral part thereof, could have been included in the ADR system by virtue of Rev. Proc. 72–10's comprehensive definition of class 65.0, Building Services, again with a class life of 50 years, *or* by Rev. Proc. 72–10's definition of class 00.3, Land Improvements (which included "inherently permanent physical structures added to land except buildings and their structural components."), with a class life of 20 years. Lastly, any of the leasehold improvements not described within class 65.0, Building Services, or class 00.3, Land Improvements, as section 1250 property would have been excluded from the ADR system by virtue of section 109(e)(1) of the 1971 Act and would have had no class life under the ADR system.

In 1974, shortly after the issuance of Rev. Proc. 72–10, section 5 of the 1974 Act again removed buildings and other section 1250 property from the ADR system until such time as section 1250 property was explicitly included in ADR classes prescribed by Treasury. Thus, as of 1974, petitioner's section 1250 leasehold improvements had no class life under the ADR system.

In Rev. Proc. 77–3, 1977–1 C.B. 535, the Service again subsumed certain section 1250 property back into the ADR system for the first time since its removal by section 5 of the 1974 Act. Section 2 of Rev. Proc. 77–3 provides in pertinent part:

> All classes of Rev. Proc. 72–10, as modified and supplemented, that included items of section 1250 property placed in service prior to January 1, 1974, the effective date of section 5 of Pub. L. No. 93–625 [1974 Act], are hereby represcribed to include all items of section 1250 property that were included prior to January 1, 1974, with the same asset guideline classes and periods, * * * as previously prescribed except for classes 65.1 through 65.45 under the title 65.0 Building Services and class 00.3 Land Improvements. Class 65.0 Building Services is not represcribed. Class 00.3 Land Improvements is prescribed as set forth below. [*Id.* at 535.]

In Rev. Proc. 77–3, 1977–1 C.B. at 536, class 00.3, Land Improvements, was modified and prescribed in pertinent part as follows:

Includes improvements directly to or added to land, *whether such improvements are section 1245 property or section 1250 property,* provided such improvements are depreciable. * * * Does not include land improvements that are explicitly included in any other class, and buildings and structural components as defined in section 1.48–1(e) of the regulations. * * * [Emphasis added.]

Class 00.3 assets were assigned a 20-year asset guideline period. *Id.*

At the time Rev. Proc. 77–3 was issued, section 5 of the 1974 Act and its legislative history made explicit that buildings and other section 1250 property were to be included in the ADR system only to the extent Treasury expressly prescribed such property into an ADR class. Any of the section 1250 leasehold improvements previously described in class 65.2 (the stores category of building services), prescribed in Rev. Proc. 72–10, were excluded from the ADR system. Rev. Proc. 77–3 did not restore, within the ADR system, the section 1250 leasehold improvements previously described in class 65.2 except to the extent that such property fit within the description of a "Land Improvement" defined in class 00.3. Although, conceivably, the section 1250 leasehold improvements could have been described in class 00.3, we need not define the phrase, used in class 00.3, "buildings and structural components as defined in section 1.48–1(e) of the regulations" for the reasons described below.

Ten-year recovery property, as defined by section 168(c)(2)(C)(ii), effective for property placed in service after December 31, 1980, required a class life under the ADR system of 12.5 years or less for section 1250 property, whereas 15-year real property, as defined by section 168(c)(2)(D), is any property with a class life of more than 12.5 years or more or no class life under the ADR system. For the years in issue, the section 1250 leasehold improvements, whether or not included in class 00.3, Land Improvements, would be defined as 15-year real property because: (1) If included in class 00.3, they would have a class life of 20 years and, (2) if excluded from class 00.3, they would have no class life under the ADR system.

Petitioner contends that Rev. Proc. 77–3 "put back each and every Code section 1250 asset that was taken out of the ADR system" by section 5 of the 1974 Act "in exactly the same place that it was before the Act was passed * * * *except* for

buildings." Petitioner interprets the creation of the ADR system and the revenue procedures that followed to mean that classes 50.0, Wholesale and retail trade, and 70.0, Services, prescribed in Rev. Proc. 72–10, contained the section 1250 leasehold improvements not constituting the building's structural shell or an integral part thereof (assets which petitioner claims were formerly classified in group 2 class 8, Wholesale and Retail Trade, of Rev. Proc. 62–21). Ultimately, petitioner contends that because Rev. Proc. 77–3 represcribed all previous classes that contained section 1250 property except for buildings, then necessarily any section 1250 property contained in classes 50.0 or 70.0, prescribed in Rev. Proc. 72–10, were represcribed back into the ADR system by Rev. Proc. 77–3.

At first glance, petitioner's argument seems logical; however, upon closer scrutiny, it is seen that petitioner's analysis ignores a pivotal point that renders its logic fatal. Petitioner's argument essentially ignores or misinterprets the mandate delivered by section 5 of the 1974 Act. To repeat, section 5 of the 1974 Act removed buildings and other section 1250 property from the ADR system until such time as they were explicitly included in ADR classes by Treasury. The Service announced, in Rev. Proc. 77–3, that it was represcribing all classes in Rev. Proc. 72–10 that previously included section 1250 property except for building services found in classes 65.1 through 65.45. This announcement, read in the context of section 5 of the 1974 Act, logically signifies that only ADR classes, prescribed in Rev. Proc. 72–10, that explicitly included section 1250 property were represcribed by Rev. Proc. 77–3 so as to include certain section 1250 property within the ADR system. Class 50.0, Wholesale and retail trade, and class 70.0, Services, represcribed in Rev. Proc. 72–10, did not explicitly include section 1250 property; therefore, Rev. Proc. 77–3 did not represcribe any of the section 1250 leasehold improvements back into the ADR system.

Our above-stated conclusion is supported by the fact that Rev. Proc. 72–10 did prescribe certain classes that explicitly contained section 1250 property. See Rev. Proc. 72–10, 1972–1 C.B. 721 (class 13.4, Marketing of petroleum and petroleum products, which included complete service stations; class 40.2, Railroad structures and similar improvements, which included stations and office buildings; and class 48.1, Tele-

phone, which included central office buildings). This in turn explains the represcription by Rev. Proc. 77–3 of previous classes containing section 1250 property.

In 1980, the Service issued Rev. Proc. 80–15, 1980–1 C.B. 618. Section 1, Purpose, of Rev. Proc. 80–15 states in pertinent part:

One purpose of this Revenue Procedure is to establish under section 1.167(a)–11 of the Income Tax Regulations a new class 57.0, Distributive Trades and Services, and a new class 57.1, Distributive Trades and Services—Billboards, Service Station Buildings and Petroleum Marketing Land Improvements. * * *

Class 57.0 includes assets formerly included in classes 13.4, Marketing of Petroleum and Petroleum Products (section 1245 property), 50.0, Wholesale and Retail Trade, 70.2, Personal and Professional Services [the successor to class 70.0 Services] * * *. Class 57.1 includes assets formerly included in class 13.4, Marketing of Petroleum and Petroleum Products (Section 1250 property, including service station buildings and all depreciable land improvements).

[1980–1 C.B. at 618.]

Class 57.0, Distributive Trades and Services, was described as follows: "Includes assets used in wholesale and retail trade, and personal and professional services. Includes Section 1245 assets used in marketing petroleum and petroleum products." *Id.* at 619. Class 57.0 was assigned an ADR midpoint class life of 9 years. *Id.* Class 57.1, Distributive Trades and Services—Billboard, Service Station Buildings and Petroleum Marketing Land Improvements, was described as follows:

Includes section 1250 assets, including service station buildings and depreciable land improvements, whether section 1245 property or section 1250 property, used in the marketing of petroleum and petroleum products * * *. Includes car wash buildings and related land improvements. Includes billboards, whether such assets are section 1245 property or section 1250 property.

Excludes all other land improvements, buildings and structural components as defined in section 1.48–1(e) of the regulations.

[*Id.*]

Class 57.1 was assigned an ADR midpoint class life of 20 years. *Id.*

Given the legislative mandate that buildings and section 1250 property were to be included in the ADR system only to the extent they were explicitly prescribed into an asset guideline class, class 57.0, Distributive Trades and Services,

prescribed in Rev. Proc. 80–15, did not include the section 1250 leasehold improvements in the ADR system. Class 57.0, the successor to classes 50.0, Wholesale and retail trade, and 70.2, Personal and Professional Services, prescribed in Rev. Proc. 77–10, 1977–1 C.B. 548, 567, did not explicitly include section 1250 property.

The conclusion that ADR class 57.0 did not specifically contain any section 1250 property is warranted for two reasons. First, former class 50.0, Wholesale and retail trade, and class 70.2, Personal and Professional Services, both of which were reclassified into ADR class 57.0, did not explicitly contain any section 1250 property. See Rev. Proc. 77–10, 1977–1 C.B. at 567. Secondly, any section 1250 property formerly contained in class 13.4, Marketing of petroleum and petroleum products, was specifically included in class 57.1, Distributive Trades and Services—Billboard, Service Station Buildings and Petroleum Marketing Land Improvements; whereas the section 1245 property formerly contained in class 13.4 was prescribed into class 57.0.

In 1983, the Service issued Rev. Proc. 83–35, 1983–1 C.B 745, the revenue procedure by which petitioner claims the leasehold improvements were prescribed into ADR class 57.0. Rev. Proc. 83–35 represcribed class 57.0, Distributive Trades and Services, and class 57.1, Distributive Trades and Services—Billboard, Service Station Buildings and Petroleum Marketing Land Improvements, verbatim as they were prescribed in Rev. Proc. 80–15, *supra.* 1983–1 C.B. at 762. Rev. Proc. 83–35 also represcribed class 00.3, Land Improvements, verbatim as prescribed in Rev. Proc. 77–3, *supra. Id.* at 747.

As previously mentioned, ADR class 57.0 did not explicitly contain any section 1250 property; thus, the section 1250 leasehold improvements could not have had a class life of 9 years by reason of ADR class 57.0. Again, we need not define the phrase "buildings and structural components as defined in section 1.48–1(e) of the regulations" used in class 00.3, Land Improvements, prescribed in Rev. Proc. 83–35, because class 00.3 assets were assigned an asset guideline period of 20 years. Under section 168(c)(2)(D) and its legislative history, whether the leasehold improvements were included in class 00.3 with a class life of 20 years or were not included in any ADR class, the leasehold improvements, as section 1250 property, would be 15-year real property.

Petitioner contends that the effect of section 5 of the 1974 Act was to restore to use the Buildings category of Rev. Proc. 62–21 in determining the applicable recovery life of real property. We agree. However, from this petitioner argues that the operative language of the buildings class in Rev. Proc. 62–21, namely, the "structural shell of the building and all integral parts thereof", governs the disposition of this case. Petitioner repeatedly argues that provided the section 1250 leasehold improvements do not constitute the structural shell of a building or an integral part thereof they are included in ADR class 57.0. Specifically, petitioner, on brief, states:

> The evolution of the ADR System * * * makes clear that the various ADR classes, and particularly class 57.0 (Distributive Trades and Services), include Code section 1250 property. The consistent pattern over the years has been to limit the assets included in the various "Buildings" categories to the structural shells of buildings and the integral parts thereof. * * * No blanket statement has ever been made that the various ADR classes did not, as a rule, include Code section 1250 property and no prohibition is specifically stated in class 57.0.

Many of petitioner's arguments focus on bifurcating the section 1250 leasehold improvements from the building's structural shell. Essentially, this line of argument is immaterial in light of the language of section 5 of the 1974 Act. Specifically, section 5 of the 1974 Act removed not only buildings from the ADR system but also "other items of section 1250 property within the meaning of section 1250(c)". Petitioner admits that the leasehold improvements in dispute constitute section 1250 property as defined in section 1250(c). As such, whether they constitute the structural shell of the building or not is irrelevant for purposes of determining that section 5 of the 1974 Act removed all of the section 1250 leasehold improvements from the ADR system.

Next, petitioner argues that if we accept the view that section 1250 property is to be included in the ADR system only to the extent that it is explicitly included in an ADR class, then there would be no need for the Treasury to explicitly exclude "buildings and structural components" in the various ADR classes prescribed. Ultimately, petitioner contends that the various ADR classes include certain section 1250 property unless the Treasury explicitly excludes it.

Petitioner's argument is flawed in that it assumes the converse of what Congress intended in enacting section 5 of the 1974 Act. We have previously required that when the language of a statute is clear, there must be unequivocal evidence of legislative purpose before we will construe the statute so as to override the plain meaning of the words used. *Florida Hosp. Trust Fund v. Commissioner,* 103 T.C. 140 (Aug. 4, 1994); *Halpern v. Commissioner,* 96 T.C. 895, 899 (1991); *Huntsberry v. Commissioner,* 83 T.C. 742, 747–748 (1984).

The plain language of section 5 of the 1974 Act excluded buildings and all other section 1250 property from the ADR system until such time as Treasury explicitly included it in ADR classes by designing a class life system for real property. Nowhere in the statute, nor in its legislative history, do we find an expression by Congress that it intended that section 1250 property is to be included in the ADR system unless and until it was explicitly removed from the ADR system by Treasury. Treasury's exclusion of buildings and their structural components from certain ADR classes is consistent with this interpretation because the exclusions simply specify that although some ADR classes were to include certain section 1250 property they were not to include buildings and their structural components. Disregarding the structural nature of the leasehold improvements, as section 1250 property, the leasehold improvements are subject to the rule, dictated by section 5 of the 1974 Act, that buildings and other section 1250 property were to be removed from the ADR system unless explicitly included in ADR classes prescribed by the Treasury.

*Conclusion*

Section 168(c)(2)(D) defines as 15-year real property section 1250 property which does not have a present class life of 12.5 years or less. Section 168(g)(2) defines present class life as "the class life (if any) which would be applicable with respect to any property as of January 1, 1981, under section (m) of section 167". The Joint Committee on Taxation explained that real property "generally includes property described in section 1250(c) that either had an ADR midpoint life of 13 years or more as in effect on January 1, 1981, or

had no ADR midpoint life as of January 1, 1981". Staff of Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 83 (J. Comm. Print 1981). Any section 1250 property not explicitly prescribed into an asset guideline class was removed from the ADR system by section 5 of the 1974 Act.

The section 1250 leasehold improvements were not explicitly prescribed into ADR class 57.0 with an ADR midpoint life of 9 years. In fact, no asset guideline class prescribed since the 1974 Act explicitly included the section 1250 leasehold improvements. As such, the section 1250 leasehold improvements had no ADR class life and under section 168(c)(2)(D) are designated 15-year real property. Even if we determined that petitioner's section 1250 leasehold improvements were described in class 00.3, Land Improvements, prescribed in Rev. Proc. 83–35, they would still be 15-year real property under section 168(c)(2)(D) because they would have had a class life of 20 years. The fact that section 5 of the 1974 Act would have allowed petitioner, under the ADR system, to calculate the leasehold improvements' useful lives under Rev. Proc. 62–21 or a facts and circumstances analysis is irrelevant for purposes of designating section 1250 property as 10-year recovery or 15-year real property under section 168(c)(2).

Since we conclude that ADR class 57.0 does not contain any section 1250 property, we need not consider the parties' remaining arguments as to what constitutes a building, its structural shell and integral parts thereof, or a structural component of a building.

At the commencement of the trial of this case petitioner's counsel stated that

I would like to conclude my opening statement by offering a little explanation as to why we are presenting this case, because I think the Court is always entitled to know why it is the parties are taking up the Court's time to decide an issue.

The amount that we are contending for here is not a large amount, given the size of the taxpayer.

\* \* \* \* \* \* \*

And the difference in recovery period or in depreciation life for the years here at issue, which are old years, would be between 10 and 15 years for the ACRS property and the difference between 7 and 15 years for the ADR property, back from 1980.

And that doesn't generate a lot of economic impact, but if you move that forward to the current period, where we are under an MACRS regimen [the so-called modified accelerated cost recovery system] * * * the difference would be between recovering it over five years and recovering it over 39 years. So the economic impact currently is much greater than it was for these years, * * *.

As part of his opening statement, respondent's counsel stated:

So it is my understanding that at one point there were simultaneously two separate ADR categories, one for retail and one for buildings that I believe would have covered this.

Now, it is my understanding that the retail ADR class continued whereas the building ADR class ceased to continue. So * * * in our view, that would be an indication that at one point they were separate categories, and they should not somehow be combined, that one continued but the other didn't, but that the one that didn't continue was not somehow sub silentio combined into the one that did.

As we have held, the class life for retail leasehold improvements of the type here at issue has not been represcribed by Treasury, either explicitly or sub silentio. Treasury's reasons for such inaction do not appear from the record, but that is within the domain of the Treasury Department and Congress, not this Court.

To reflect the foregoing,

*Decision will be entered for respondent.*