**WALGREEN COMPANY & SUBSID-IARIES, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 95–1116.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1995.

Decided Oct. 17, 1995.

David J. Duez (argued), Lydia R. Kelley, Gregory F. Jenner, William L. Goldman, and Gail H. Morse, McDermott, Will & Emery, Chicago, IL, for Petitioner–Appellant.

Stuart L. Brown, Internal Revenue Service, Washington, DC, Richard Farber, Gary R. Allen, Frank P. Cihlar (argued), S. Robert Lyons, Department of Justice, Tax Division, Appellate Section, Washington, DC, and James S. Stanis, Internal Revenue Service, Chicago, IL, for Respondent–Appellee.

Before POSNER, Chief Judge, and CUDAHY and MANION, Circuit Judges.

POSNER, Chief Judge.

Between 1980 and 1984 Walgreen made a number of leasehold improvements in drugstores and restaurants that it owned. The improvements were depreciable real property within the meaning of section 1250(c) of the Internal Revenue Code—"section 1250 property," as it is called; depreciable personal property, such as machinery, is covered in section 1245 and is not involved in this case. The improvements included interior partitions, millwork, acoustic ceilings, floor finishings, and bathroom and lighting fixtures. On its income tax returns for 1983 and 1984 Walgreen depreciated these improvements faster than the Tax Court thought authorized. Whether the court was correct turns on a complicated regulatory history but one that we can simplify without loss.

The rate of depreciation of an asset depends on the asset's useful life. In 1962 the Internal Revenue Service prescribed useful lives both for types of asset and types of business. Rev.Proc. 62–21, 1962–2 Cum.Bull. 418. One type of *asset* was "Buildings," defined as including "the structural shell of the building and all integral parts thereof." One type of *business* was "Wholesale and Retail Trade." An asset might be a building used in wholesale and retail trade, and thus fall into two useful-lives groups. To take care of such overlaps, Rev.Proc. 62–21 provided that an asset that fell within both an asset group and an activity group would be classified in the asset group.

In 1971 the Treasury established new useful lives (the "Asset Depreciation Range"), which taxpayers could elect to use in lieu of the old ones, but only for "eligible property." This was defined to exclude section 1250 property. Treas.Reg. § 1.167(a)–11(b)(2) (1971). Consequently, the Buildings class was dropped from the new system, since it consisted entirely of section 1250 property. The Wholesale and Retail Trade class was

retained. Treas.Reg. § 1.167(a)–11(b)(2)(ii) (1971); Rev.Proc. 71–35, 1971–2 Cum.Bull. 553. This class (Class 50.0) would have included Walgreen's leasehold improvements but for the exclusion of section 1250 property from property eligible for depreciation under the Asset Depreciation Range system—for remember that the improvements at issue in this case are section 1250 property.

The Asset Depreciation Range system existed alongside the system of useful lives that had been created in 1962, as well as an even older system, in which useful lives were determined on an individual rather than a class basis. In section 109(e) of the Revenue Act of 1971, 85 Stat. 510, Congress directed the Treasury to simplify the determination of useful lives for purposes of depreciation by creating a system that would be based on the Asset Depreciation Range system but would include section 1250 property. See also S.Rep. No. 92–437, 92d Cong., 1st Sess. (1971) U.S.Code Cong. & Admin.News 1971 at pp. 545, 585–588. The Treasury responded by expanding the definition of "eligible property" to include section 1250 property and by announcing that classes of useful lives were being set forth in a new revenue procedure. Proposed Treas.Reg. §§ 1.167(a)–11(b)(2)(iii)(b), (b)(ii) (1972); Treas.Reg. §§ 1.167(a)–11(b)(2)(iii)(b), (b)(ii) (1973). The new revenue procedure, Rev.Proc. 72–10, 1972–1 Cum.Bull. 721, repromulgated Class 50.0 (Wholesale and Retail Trade) without change; but by virtue of the redefinition of "eligible property," the class no longer excluded section 1250 property. Rev.Proc. 72–10 also repromulgated the old Buildings class, with just a few changes, as Class 65.0, "Building Services." Unlike Rev.Proc. 62–21, the new revenue procedure did not contain a priority rule. The government's alternative argument for affirmance assumes that the old priority rule remained in effect—that any asset that was in both Wholesale and Retail Trade and Building Services would be classified in Building Services, for which the Internal Revenue Service, not surprisingly, specified a longer useful life. Walgreen does not challenge the assumption, so we shall accept it for purposes of deciding the appeal.

In 1974, concerned because the Treasury had failed to complete a study of appropriate useful lives for real property, Congress repealed the provision of the 1971 Act that had directed the Treasury to include section 1250 property (that is, depreciable real property) in the Asset Depreciation Range system. Revenue Act of 1974, § 5, 88 Stat. 2112. The effect of this repeal was not to forbid the Treasury to include section 1250 property in the Asset Depreciation Range system—for what was repealed was a directive rather than an authorization—but merely to leave decision on the matter to the Treasury. Three years later the Treasury directed that "all classes of Rev.Proc. 72–10 . . . are hereby represcribed to include items of section 1250 property that were included prior to January 1, 1974 . . . except for . . . Building Services and . . . Land Improvements." Rev.Proc. 77–3, 1977–1 Cum.Bull. 535. So if any items of section 1250 property, and specifically the leasehold improvements that Walgreen made in its drugstores and restaurants between 1980 and 1984, had been included in Wholesale and Retail Trade by Rev.Proc. 72–10, they continued to be included in it after the Treasury "represcribed" the classes of Rev.Proc. 72–10 (all but Building Services and Land Improvements) in 1977.

The Asset Depreciation Range system was later replaced by the Accelerated Cost Recovery System, and it is the latter system that is applicable to the leasehold improvements in this case. But it incorporates by reference the earlier classifications, with the result that if the leasehold improvements are classified in Wholesale and Retail Trade (now Class 57.0, but identical to the old Class 50.0, *Hauptli v. Commissioner,* 56 T.C.M. (CCH) 583, 586, 1988 WL 116965 (T.C.1988), rev'd on other grounds, 902 F.2d 1505 (10th Cir. 1990)), Walgreen can depreciate them over 10 years. Otherwise it must depreciate them over either 15 or 18 years, depending on the dates on which various improvements were made. 26 U.S.C. §§ 168(c)(2)(C)(ii), (D), (g)(2) (1984).

■ In summary, when in 1972 the Internal Revenue Service (in Rev.Proc. 72–10) repromulgated the class Wholesale and Retail Trade after "eligible property" had been ex-

panded to include section 1250 property, the effect was to bring within the class all assets used in wholesale or retail trade except those classifiable under Building Services; and when five years later the Service repromulgated the Wholesale and Retail Trade class intact, the section 1250 property used in that trade was again included in the class except as it might also fall under Building Services. That at least is the obvious inference from the history that we have narrated, but the Tax Court rejected it on the ground that Rev.Proc. 77–3 had failed to represcribe section 1250 property "explicitly." And that is true. The revenue procedure did not mention such property; it merely repromulgated the earlier revenue procedure which also had not mentioned section 1250 property but had included it by implication from the fact that the Treasury had expanded the concept of "eligible property" to include section 1250 property. But we cannot find either in law or in common sense any basis for a requirement that the Internal Revenue Service be "explicit" when it establishes the boundaries of a useful-lives class. Nothing in the Revenue Act of 1974, or anywhere else so far as we can discover, imposes such a requirement; nor did the Tax Court explain its provenance. The best the government can offer by way of defense of the Tax Court's position is that Congress would not have wanted the Treasury to prescribe useful lives for real property before completing a study of the issue. But Congress did not condition the Treasury's authority to prescribe useful lives for real property on the completion of a study. Nor is a requirement of explicit prescription or represcription the same thing as the requirement of a study. Had Rev.Proc. 77–3 said that Class 50.0 was being represcribed, section 1250 property and all, the Tax Court's requirement of explicit represcription would have been satisfied even though no study had been completed.

■ The government places the weight of its argument on another point, one that the Tax Court expressly declined to reach: that all section 1250 property, or at least all the leasehold improvements at issue in this case, fall under Building Services, and therefore were never a part of Wholesale and Retail Trade. Class 65.0, "Building Services," a slight amplification of the old "Buildings" class, covers "the structural shells of buildings and all integral parts thereof: equipment that services normal heating, plumbing, air conditioning, illumination, fire prevention, and power requirements; equipment for the movement of passengers and freight within the building; and any additions to buildings or their components, capitalized remodeling costs, and partitions both permanent and semi-permanent." At first glance this definition seems broad enough to cover the various leasehold improvements at issue here—interior partitions, millwork, lighting fixtures, and so forth. But this is true only if the phrase "structural shells of buildings and all integral parts thereof" means "the building and all its fixtures" as the term "fixtures" is understood in the law of real property. An alternative interpretation is that the class refers to the shell itself plus the parts that are essential to its functioning as a usable, habitable building, such as elevators and air conditioning, but not to the type of improvements, perhaps largely decorative, necessary to make the building suitable for a particular tenant's use—improvements likely to have a shorter useful life. We do not have any confidence in the alternative interpretation; the references to remodeling costs and to semipermanent partitions cut against it; but we are not prepared to say, the Tax Court not having addressed the issue, that Building Services embraces *every* improvement to real property and specifically every improvement that Walgreen seeks to classify under Wholesale and Retail Trade. One of those improvements, we were told at argument, is a sign in front of one of Walgreen's buildings and not attached to it. It is difficult to imagine classifying that sign as an integral part of a structural shell.

■ The fitting of a legal definition to the "facts" is itself a task of factfinding for purposes of determining the scope of appellate review, as we keep reminding the bar, most recently in *Brooks v. Buscher*, 62 F.3d 176, 179 (7th Cir.1995), and *United States v. Baldwin*, 60 F.3d 363, 365 (7th Cir.1995). It is therefore a task for the Tax Court, as we have specifically held, *Williams v. Commissioner*, 1 F.3d 502, 505 (7th Cir.1993); *Estate*

of *Whittle v. Commissioner*, 994 F.2d 379, 381 (7th Cir.1993); *Commissioner v. Hendrickson*, 873 F.2d 1018, 1022 (7th Cir.1989), rather than for us. We hold that Class 50.0 (now 57.0), Wholesale and Retail Trade, includes all section 1250 property not classified in Class 65.0, Building Services, and therefore remand to the Tax Court for a determination whether any of Walgreen's leasehold improvements are section 1250 property not classified in Class 65.0, in which event Walgreen is entitled to depreciate it, for the taxable years in question, on the basis of a useful life of 10 years.

REVERSED AND REMANDED.